BISHOP BROTHERS ET AL. *v.* CHARLES ROSENBAUM.

1. CHANCERY. *Jurisdiction. Injunction. Suit of claimant in attachment against creditors.*

R. bought a stock of goods from W., who was insolvent. Three of the creditors of the latter sued out attachments, on the ground of fraud in the sale to R., which were levied respectively on different portions of the goods, but together covered the whole stock. R. made affidavits in the several suits as a claimant of the goods, and gave corresponding bonds therefor, the aggregate amount of which was double the value of the property. Subsequently two other attachments were levied on the same goods, and R. was again compelled to give bonds for them. He was then informed by the sheriff that there were other attachments sued out, or to be sued out, that would be levied on the property in succession, so long as he continued to bond the same. Thereupon R. filed a bill in chancery stating the facts above indicated, alleging that irreparable injury would result from the successive levy of attachments far in excess of the value of the goods, averring the good faith of his purchase, and praying that the further levy of attachments be enjoined, and that the Court of Chancery take jurisdiction of the entire subject and decree him to be the lawful owner of the property. A demurrer to the bill for want of jurisdiction was overruled. *Held*, that the demurrer was properly overruled, and it was right for the Chancery Court to interpose, for the reason that, after attachments had been levied upon all of the property and bonds given for the full value thereof, other attachments were levied upon the same property and further bonds given therefor, and still other attachments threatened against the property; so that the intervention of a court of chancery, at some time, to administer the rights of the parties was inevitable.

2. SAME. *Jurisdiction. Injunction. Multiplicity of suits in attachment.*

Although a statute of this State points out a mode of procedure in attachment suits, and provides a method for third persons to assert their claims to the property attached, which method is, ordinarily, exclusive of all others, it does not deprive the Court of Chancery, in such cases, of its jurisdiction to interpose for the prevention of a multiplicity of suits, where the circumstances render such interposition proper.

APPEAL from the Chancery Court of Kemper County.

Hon. GEORGE WOOD, Chancellor.

The case is stated in the opinion of the court.

*Nugent & McWillie*, for the appellants.

The bill of Rosenbaum was demurred to, and the demurrer was overruled. This we assign for error. We do not notice specially the several grounds of demurrer, as we think, taken together, we may more readily dispose of them. The *grava-men* of the complaint is, that as the goods were replevied by Rosenbaum they were again and again attached, necessitating a continuing replevy by him and the incurring of obligations in excess of the value of the goods. This, of itself, could furnish no ground for *equitable* relief. Granting the argument to be true that the goods, even when replevied, were *in custodia legis*, it could by no means follow that a court of equity had any right to interfere. The statute wisely provides for bonds of indemnity, and the sheriff would be liable on his bond for doing anything in excess of the law, or rather not warranted by law. We admit the injustice of levying repeated attachments on the same stock of goods which has been before attached and replevied, where the first attachment covered the total value of the goods. But the Circuit Court has the power, and it would be the duty of the court, to protect parties, to quash the suits, dissolve the attachments, and punish the offence. The innocent purchaser would have recourse on the indemnifying bonds given to the sheriff. It would appear, therefore, that the appeal to the Chancery Court was wholly unnecessary on this ground.

Again: We believe it to be settled law that being a *bona fide* purchase is not a ground for relief, although it may be a defence. *Patterson* v. *Slaughter*, Amb. 293; *Beekman* v. *Frost*, 18 Johns. 544, 561. In the case last cited, Spencer, C. J., observed: "No book of precedents, no treatise on equity, furnishes an instance of a bill filed on the ground that there has been a purchase without notice and for a valuable consideration." Commenting on this state of the law, the annotators of Leading Cases in Equity say: "The true rule, therefore, appears to be that, to entitle a purchaser to come into a court of equity as a plaintiff, it must appear

that the circumstances are such as not only to discharge his conscience but charge the defendant's. If the latter is under an obligation which cannot be enforced at law, a chancellor will not withhold his aid because the complainant's right grows out of a purchase." 2 White & Tudor Ld. Cas. 35, pt. 1. The concession in favor of such purchasers was intended to be a shield to protect them, and the qualification of the rule above quoted does not apply to the case at bar. The complainant asks the chancellor to arrest the whole proceedings at law in all the cases because he says he is a *bona fide* purchaser for value. Could he not have set up that on a claimant's issue in the Circuit Court? Was there anything in the case which charged the defendants' conscience? Were they under any obligation which could not be enforced at law? It is clear, therefore, that the demurrer should have been sustained on this ground.

*L. Brame*, on the same side.

An analysis of the bill shows an attempt to base the right to an injunction upon these grounds : (1) irreparable injury ; (2) repeated trespass ; (3) multiplicity of suits.

1. I admit the general principle that courts of equity have jurisdiction is cases of irreparable wrong ; but the facts stated in the bill in this case do not show that the damage apprehended would be irreparable. The creditors were compelled to give indemnifying bonds before their attachments were levied. And if such bonds were not intended to protect claimants in cases like this, then it is foolish to require them in any case. The creditors had the right to levy on the property, and Rosenbaum was fully indemnified against any injurious consequences. So that, if the goods had been taken away, or destroyed, a court of equity would have had no jurisdiction, as the claimant was fully indemnified. The bill does not allege that the indemnifying bonds are not good. It does not allege that the parties are insolvent. Nor is it shown that the sheriff's official bond is insufficient. The indemnifying bonds are conditioned for the payment of all damages. Code 1871,

sects. 844, 1438.   If the sheriff commits a trespass in taking property not liable to the writ, he is liable for damages.

2. Now, what are the facts as to the alleged repeated trespasses?   Each of the appealing creditors did all that was required as a condition precedent to having a judicial inquiry, in an ordinary form of action at law, into the question whether the goods were the property of Wood & Co., and liable to be levied upon as such.   They each levied only once, and on goods that had not been seized or replevied before.   After this there was, by other creditors, some repetition of the levies ; but these parties had nothing to do with that.   Assuming that the court could take jurisdiction and enjoin those creditors who subsequently levied, it was certainly improper to enjoin these parties.   So, even if there was a case for an injunction against the creditors who levied last, the decree must be reversed, as there is no pretence that the first levies were wrong, or that the creditors making them had done or threatened to do more than they had the right to do.   The bill does not claim that there was any combination or conspiracy among the creditors to harass or oppress the complainant.   And if it be granted that persons not parties to this suit threatened to pile up levies on the goods, that was no reason for interfering with judicial proceedings instituted by other creditors.   Each of the creditors, proceeding in the ordinary way, had the right to levy once upon the goods, or a sufficiency thereof to satisfy his debt, until an amount had been levied on, and replevin bonds given therefor, sufficient to cover the value of the entire stock of goods.   See *Hatcher* v. *Hampton*, 7 Ga. 49 ; *West* v. *Mayor*, etc., 10 Paige, 539 ; High on Inj., sect. 54, and notes ; *Porter* v. *Fraser*, 1 Harr. (Mich.) 157.

3. The case of *Porter* v. *Fraser*, above cited, is a complete answer to the proposition that this injunction may be maintained to prevent a multiplicty of suits.   See also *Hatcher* v. *Hampton*, 7 Ga. 49.

*Frank Johnston*, for the appellees.

Counsel for the appellants insist that the whole burden

of proof rested on Rosenbaum to show that he had not committed a fraud, and they cite a lot of authorities to prove the proposition that the defence of *bona fide* purchaser without notice must be pleaded with fulness and precision.

This is a rule in equity, and is applied to a case of *subsequent purchasers* who claim superiority over a *prior legal* title because of the equity of being purchasers *for value without notice.*

And even in equity, where the equity of want of notice is set up between second and first purchasers, the first purchaser under an unrecorded deed ought to show notice.

But, however the rule as to the *onus probandi* would be between purchasers, it does not apply to this sort of case. Rosenbaum does not come into a court of equity because he has an equitable title, or an equity springing out of his *bona fides* and want of notice; but the equity predicate of the case is repeated and vexatious trespasses and the avoidance of multiplicity of suits.

After getting jurisdiction thus, the court of equity incidentally considered and decided the question of title, on the principle that, having acquired jurisdiction, it would decide the whole case.

The jurisdiction of the court of equity rests, in this case, upon these several grounds, separately and considered together: Repeated and vexatious trespasses, and threats of further trespasses; irreparable injury, incapable of remedy by damages at law; multiplicity of suits at law, by many persons asserting rights under the same common source; and the insolvency of the sheriff.

It is not improper to assert that the sheriff (one of the appellants), with other appellants, treated Mr. Rosenbaum most shamefully, by the repeated levies after the replevin of the goods, and the expressed determination of levying each time the goods should be replevied.

Preventing a multiplicity of suits is itself a distinct ground of original jurisdiction. 1 Story's Eq. Jur., sect. 64 k. Courts

of equity interfere, in cases of trespasses, to prevent irreparable mischiefs (2 Story's Eq. Jur. 928), especially in cases of repeated trespasses. *Musselman* v. *Marquis*, 1 Bush, 463 ; *Stage-Horse Case*, 15 Abb. Pr. (N. s.) 51. Having acquired jurisdiction for one purpose, the court of equity can try the whole case. 1 Story's Eq. Jur., sects. 64 k, 65. The prevention of multiplicity of suits is quite distinct from the question of a remedy at law. *Coit v. Horn*, 1 Sandf. Ch. 1. *Nevitt* v. *Gillespie*, 1 How. 108, is an authority in point on the question of multiplicity of suits.

*T. W. Brame*, on the same side.

The only question that arises in this case is whether the assignment of Wood & Co. to Rosenbaum was fraudulent or *bona fide*.

Upon the general principles of law in regard to granting injunctions and making decrees perpetuating them, the facts alleged in the bill of complaint gave the Chancery Court ample jurisdiction to grant the relief prayed for, and the only hesitation the court could have in rendering a decree perpetuating the injunction is as to the *bona fides* of the transfer from Wood & Co. to the appellee. The question whether the transfer was made in good faith depends upon the proof adduced, in connection with the laws applicable to the same. And I submit that the proof fails to show any fraud in that transaction, but fully sustains the allegation of the bill as to the *bona fides* thereof. The conduct of the appellants in the whole course of their litigation with the appellee has been very harsh, if not even oppressive, and the case is one eminently adapted for the interposition of a court of equity. The decree should not be disturbed by this court.

CHALMERS, C. J., delivered the opinion of the court.

On the 28th of April, 1876, Charles Rosenbaum purchased from Wood & Co. a stock of dry goods and groceries in the town of Scooba, including the good-will and unexpired lease

of the retiring firm, and thereafter continued the business in the building formerly occupied by them.

Wood & Co. were largely insolvent, and sundry of their creditors, believing that the sale was colorable and collusive, sued out attachment writs against them, and had the same levied upon the goods in the possession of Rosenbaum. The first three attachments were levied upon different portions of the goods, and in the aggregate embraced the entire stock.

Rosenbaum interposed the claimant's affidavit to each of these attachments, and gave separate bonds to each in double the amount of the goods seized, as required by statute ; so that in the aggregate his bonds covered double the value of all the goods. Two other attachments were subsequently levied upon the same goods, at the instance of other creditors of Wood & Co., and Rosenbaum was again compelled to give further bonds for the forthcoming of the same property. When he gave the last bond, the sheriff informed him that there were still other creditors of Wood & Co. who had sued out or intended to sue out attachments, and that these would be levied in succession so long as he continued to bond the property.

He therefore filed this bill in chancery, setting forth these facts, alleging that irreparable injury would be done by the successive levy of attachments far in excess of the value of the goods, averring the *bona fides* of his purchase and ownership of the property, and praying that the levy of further attachments might be enjoined, that the Court of Chancery would take jurisdiction of the entire subject, and, upon final hearing, declare him to be the lawful owner.

The bill was demurred to for want of jurisdiction, it being insisted that, as each attaching creditor was simply pursuing, without complicity or connection with the others, his legal right as given by statute, and as Rosenbaum's right to interpose his claim and replevy the property was also statutory, the method thus provided by law for ascertaining and settling the respective rights of the parties was not only ample, but

was exclusive of all others, and left no excuse for invoking the interposition of a court of equity.

The demurrer was properly overruled. While it is true that the statute points out a mode of procedure in attachment suits, and provides a method for third persons to assert their claims to property attached which is ordinarily exclusive of all others, this will not deprive the Court of Chancery, even in this class of cases, of its right to interpose, with a view of preventing a multiplicity of suits, where the circumstances render such interposition proper. " The prevention of vexatious litigation and of a multiplicity of suits constitutes a favorite ground for the exercise of the jurisdiction of equity by way of injunction, and it may be laid down as a general rule that whenever the rights of a party aggrieved cannot be protected or enforced in the ordinary course of proceedings at law except by numerous and expensive suits, a court of equity may properly interpose and afford relief by injunction. And where there is one common right in controversy, which is to be established by or against several persons, — one person asserting the right against many, or many against one, — equity may interfere, and, instead of permitting the parties to be harassed by a multiplicity of suits, determine the whole matter in one action." High on Inj., sect. 12. Same principle, Id., sect. 53.

We rest the right of equitable interference in this case not on the mere fact that it was a common transaction, to be established in each case by one against many, and depending in each case upon the same proof, but upon the fact that attachments have been levied and others threatened upon property for which bonds had already been given to the full value of the property. So long as the several writs were levied on separate property, or the bonds given did not exceed the value of that property, no harm could accrue from separate trials at law ; but where this is not the case, and where the claimant has been forced to give to different persons several obligations for the same property far in excess of its value, the interposition of a court of equity, sooner or later, becomes indispensa-

ble ; since, if judgments are obtained upon all of the bonds, the Chancery Court must necessarily be applied to to restrain their enforcement beyond the value of the goods.   Since its jurisdiction must, therefore, be invoked in the end to cure the effects of such proceedings, we see no reason why it should not in the outset be exercised to prevent such a result.

Upon the facts of the case we will not disturb the finding of the chancellor.

Decree affirmed.