WILLIAM H. STOCKWELL *vs.* JAMES H. FITZGERALD, et al.

May Term, 1895.

Present: ROSS, C. J., ROWELL, MUNSON, START and THOMPSON, JJ.

*Equity Jurisdiction—Multiplicity of Suits—Right of Way—Estoppel—Construction of Deeds.*

The orator seeks to maintain a right of way against the encroachments of several persons having distinct interests. The establishment of his right at law would require separate suits against the different abutting owners, with a verdict for the plaintiff in each suit and a substantial uniformity of the lines of location. Proceedings at law might result in his having no passageway, although securing a strip of sufficient width as against each lot. The controversy should be disposed of in a single suit and equity has jurisdiction.

The orator is estopped from claiming a passageway of the width and location of the original survey by the act of his grantor in consenting to an encroachment upon one side of the way by a fence of the abutting owner, but he is not thereby precluded from claiming one of sufficient width for convenient passing, outside the fence, not to interfere with rights on the opposite side of the way.

The owners of such opposite rights are not entitled to occupy to the line of the way as originally surveyed, for some of them took their deeds after the way had become well defined by use beyond the survey, and their deeds are as well satisfied when treated as referring to the actual as to the surveyed way, and others took their deeds before the encroachment and, by their conduct, must be considered to have acquiesced therein.

CHANCERY. Heard upon pleadings, master's report and exceptions thereto at the June Term, 1894, Bennington County, before *Taft*, Chancellor, without argument. Orator's exceptions overruled, and bill dismissed with costs. The orator appealed.

*W. B. Sheldon* for the orator.

Equity has jurisdiction. *Lyon* v. *McLaughlin*, 32 Vt. 423; *Marble Co.* v. *Adams*, 46 Vt. 503; *Canfield* v. *Andrew*, 54 Vt. 12; *Sargent* v. *George*, 56 Vt. 631; *Gilchrist* v. *Van Dyke*, 63 Vt. 78.

*Batcheler & Bates* for the defendants.

If the orator has any rights they are enforcible at law. *Marble Co.* v. *Adams*, 46 Vt. 496; *Currier* v. *Rosebrooks*, 48 Vt. 34.

The orator is estopped from claiming a passage according to the original survey. Herman on Estoppel, 419; *Chapman* v. *Chapman*, 59 Pa. 214; *R. R.* v. *McLanahan*, 59 Pa. 23; *Bank* v. *Hazard*, 30 N. Y. 226; *Wendell* v. *Van Rensselaer*, 1 Johns Ch. 354; *Cady* v. *Owen*, 34 Vt. 598; *Soper* v. *Frank*, 47 Vt. 368.

MUNSON, J.  In July, 1871, Abram N. Pruyn was the owner of a tract of land, which was subject to a mortgage, executed to one Sumner and then held by I. F. Paddock. This tract was partially bounded on the south by a highway, and was not elsewhere accessible from a highway.  On the 28th of the month, in anticipation of a division of the tract among different purchasers, Pruyn had a road, two rods wide, surveyed through it from the highway by one Edward Rice.  On the first day of April, 1872, he conveyed three parcels of the tract by separate deeds, which contained grants or reservations based on this survey.  One was a conveyance to John H. McKinty of a parcel which included all of the tract contiguous to the highway, and which reserved for a road to premises sold to Aaron R. Moon a strip two rods wide across the premises described, as the same had been surveyed by Rice.  Another deed conveyed to Aaron R. Moon a parcel adjoining McKinty's lot on the north, excepting a strip two rods wide across the premises described, as the same had been surveyed by Rice, to be used as a road to other lands of the grantor lying further north. The remaining deed conveyed to Gilbert W. Pruyn a parcel of the land further north, reserving a strip two rods wide through the premises described, as surveyed by Rice, for a highway to lands beyond, and granting a right of way through lands before deeded to Moon, and McKinty where the road then ran to the main road.  The orator is now the

owner of the land conveyed to Moon, and of other parcels of the tract above described. The defendant Fitzgerald, is the owner of that portion of the McKinty purchase which lies east of the road in question.

When McKinty received his deed he executed to Pruyn a mortgage of the land conveyed, and this mortgage was soon after assigned to Paddock. October 22, 1873, McKinty gave to Edward, John and Catherine Fitzgerald, executors of Michael Fitzgerald, a mortgage in usual form of that part of his land west of the road that was adjacent to the highway, making the easterly line of the land mortgaged "the center of a private passage-way used for houses further north," and conveying "subject to a right of way one rod wide across the north and east sides of the lot." This is the piece set up in the bill as occupied and claimed by the widow and heirs of Patrick Morrissey. April 1, 1874, McKinty conveyed by warranty deed to Margaret Jones the remainder of his purchase lying west of the road, making the west side of the road the easterly bound of the land conveyed. May 26, 1874, Paddock executed to McKinty a quit claim of that part of McKinty's purchase lying west of the road, bounding it on the east "by the road leading northerly" from the highway. July 10, 1876, McKinty conveyed to John and Edmund Fitzgerald by quit claim the land before mortgaged to the executors of Michael Fitzgerald, but the terms of the description do not appear.

Paddock obtained a decree on the Sumner mortgage at the June Term, 1875, and a decree on the McKinty mortgage at the December Term, 1881. The equity of the last foreclosure expired in January, 1883. On the second of April, 1883, Paddock conveyed the McKinty premises by quit claim to Mary A. McKinty, the wife of John H. McKinty, bounding them on the west "by the lane leading northerly" from the highway. March 21, 1884, McKinty and his wife conveyed the premises to the defendant Fitzgerald, describing them as bounded on the west "by a lane running from the highway" to lands of the orator.

In February, 1874, John H. McKinty obtained from Abram N. Pruyn a quit claim deed of all that the grantor then owned of the entire tract before described as having been held by him in July, 1871. November 25, 1884, McKinty and wife conveyed to one Catherine McCabe by warranty deed the road as surveyed by Rice, reserving the rights of way of the orator, Margaret Jones and the Harney estate; and October 15, 1886, Catherine McCabe executed to the orator a warranty deed of the same two-rod strip, with a reservation of the same rights.

On the 13th of April, 1877, Paddock conveyed to the orator certain parcels of this tract with the appurtenances, which parcels were accessible from the highway only by means of this road. April 10, 1889, Paddock quit claimed to the orator a strip of land two rods wide extending from the main highway through lands formerly owned by Abram N. Pruyn, with a statement of the grantor's intention to convey his right to the lands in and over which the grantee, the heirs of Thomas Harney and the widow Jones had a right of way as appurtenant to lands owned and occupied by them respectively, through, across and over lands formerly owned by the said Abram N. Pruyn, to the highway. Paddock never claimed nor exercised any rights in the road as surveyed by Rice, adverse to the right of the orator or other owners of the land for whose benefit the road was surveyed.

The survey of the road in question was never placed upon record. The year McKinty took his deed, he procured from Rice a copy of the survey, and a map showing its exact location. He went into possession of the lot about the time of his purchase. The travel was not confined to any particular route until the summer of 1874, when McKinty enclosed his land by a permanent fence. This was built further west than the east line of the road as surveyed by Rice, and was so built with the permission of Moon. In 1879, McKinty rebuilt the southerly part of the fence,

carrying it still further west. He never claimed the right to maintain the fence where located, and expected to withdraw it to the line of the survey whenever called upon to do so by any one interested in the road. Before the fence of 1874 was built, the owners of the back lots crossed McKinty's land wherever convenient, and the travel was not so concentrated as to leave upon any particular course the indications of a road. Since then the travel has been in the path now used, and has always been sufficient to mark it plainly. Fitzgerald knew at the time he bought that the lane referred to in his deed was a surveyed road, but did not know the location of the survey. The fence before mentioned was still standing, and he supposed it was substantially on the line. He made no inquiries in regard to the survey, but maintained the fence where he found it, and claimed to own to it.

The fence as finally located by McKinty was crowded so far to the west that it brought into his enclosure all of the road as surveyed for six rods or more from the highway, and a considerable part of it across his entire lot. His grantees on the opposite side built their fences up to the travelled path before he sold to defendant Fitzgerald, but at what time does not appear. The result was that the road as thus located was made less than two rods between fences, and in places so narrow that it was difficult to pass with loads of hay. In 1889 the orator requested the owners to put the fences on the lines of the Rice survey or to move them back so as to leave the road two rods wide. The defendant Fitzgerald refused to move his fence, claiming to own to the line of it. The owners on the other side refused to move back their fences, claiming to own to the westerly line of the Rice survey. The orator thereupon brought this bill to the June Term, 1889, filing the same April 25th.

None of the defendants have answered except Fitzgerald and the administrator of Patrick Morrissey. The master reports that all the defendants have the rights and make the

claims set up in the bill. The bill states that Margaret Jones has for more than eight years last past, and that Patrick Morrissey in his lifetime and since his decease his widow, heirs and administrator have for ten years past, maintained obstructions within the limits of said road claiming ownership therein, and prays for an injunction against James H. Fitzgerald, Margaret Jones and the widow, heirs and administrator of Patrick Morrissey. So the question for determination is confined to that section of the road which crosses the McKinty purchase.

Equity has jurisdiction. The orator seeks to maintain a right of way against the encroachments of several persons who have distinct interests. The establishment of his right at law would require separate suits against the different adjoining owners, with a verdict for the plaintiff in all the suits and a substantial agreement upon the lines of location. Proceedings at law might result in his having no passageway, although given a strip two rods wide as against each lot. The controversy is clearly one that should be disposed of in a single suit.

Whatever right Pruyn had after giving the deeds of April 1, 1872, and passed to McKinty by his deed of 1874, was subject to the mortgage covering the entire tract, and was foreclosed by the decree obtained by Paddock in 1875. Whatever Mrs. McKinty obtained by virtue of Paddock's deed given subsequent to both the foreclosures, was conveyed to Fitzgerald by the deed of March, 1884. It follows that McKinty and his wife had nothing to convey when the deed of November, 1884, was given to Catherine McCabe, and that the orator obtained nothing by his deed from McCabe.

Paddock's quit claim to McKinty of May 26, 1874, released the land described from the lien of his mortgages; so he obtained nothing west of the center of the road by his subsequent foreclosures. Whatever of the McKinty purchase was not so released, Paddock acquired by his

foreclosures, and conveyed to Mrs. McKinty by his deed of April, 1883. It is certain that these deeds left no strip of land between the two parcels conveyed, unless the road as it existed in May, 1874, was west of its location in 1883; while the reverse is the fact. So the orator obtained nothing by Paddock's deed of 1889, and can have no other right of way than the one appurtenant to the lots conveyed him.

It is found that the orator is the owner of the Moon parcel, but when and how he obtained it, and whether directly from Moon, does not appear. It appears that Moon was affirmatively instrumental in determining the location of the travelled path, for he consented to the erection of the fence which crowded it to the west. No use was made of the survey in determining the exact location of the road. The travel finally settled in a different path, which was afterwards followed without question or complaint. We think the orator must be treated as having acquiesced in this change of location. But this acquiescence did not include a waiver of his right to an adequate and convenient way, and the court will decree such a way if not prevented by rights otherwise acquired.

Upon the findings of the master in regard to McKinty's possession the defendant Fitzgerald cannot claim the road by adverse possession, for his own undisputed occupancy was less than fifteen years. So he has only the rights given him by his deed.

The report states that Paddock foreclosed the Sumner mortgage, and that the equity expired without redemption. In the absence of anything limiting this general finding, it must be held to establish a valid foreclosure of all rights. So whatever Paddock obtained by this foreclosure was freed from the incumbrance of the right of way. His prior deed of May, 1874, releasing the land west of the road, must have referred to the road as surveyed, for the travel was not then concentrated in any one path. His deed of April, 1883, conveying to Mrs. McKinty the land east of the road, must

doubtless be held to refer to the road as actually established, for it had then been located and fenced for several years. But the operation of this deed, although in terms sufficient to convey to the center of the road as located, was limited, by the effect of the previous deed, to the center of the road as surveyed. It appears then that Fitzgerald, Mrs. McKinty's grantee, has an unincumbered title to the center line of the Rice survey by virtue of Paddock's grant, and cannot be required to withdraw his fence beyond that line.

The buildings of the defendant Jones are on the northerly side of her lot, next to the orator's land; and are reached by travelling this road nearly the entire width of the McKinty purchase. She must be held to have acquiesced in the change of location, for the travel was not concentrated in its present course until after she purchased. The owners of the Morrissey piece must be held to have bought with reference to the road as located. The permanent fence, which enclosed substantially all of the Rice survey opposite the Morrissey piece, was built, and the travel established in its present path, before the Morrissey lot was sold off by McKinty. Nothing appears from which it can be claimed that the easterly bound of the Morrissey lot was the road as surveyed, rather than the road as actually located. So none of the owners of that part of the McKinty purchase lying west of the road are in a position to insist upon having the location of the road determined by the lines of the Rice survey.

Nor have the owners of either lot acquired a right to have the western limit of the road as located restricted to the line of the fence. The master reports that the purchasers of McKinty's land west of the road built fences a part of the distance along their front on the road as travelled, and up to the travelled path. The Morrissey piece was not purchased until 1876, and this does not leave room for fifteen years adverse possession to the fence, even if built as soon as the purchase was made. The Jones piece was conveyed April 1, 1874, and if the grantee immediately built a fence along

the road as travelled, the fifteen years would have expired a few days before the bill was brought. But the finding in regard to fences cannot be given this effect, for the travel across McKinty's land was not confined to any particular route until after the erection of his permanent fence, which was not earlier than June, 1874. So the fence referred to in the report cannot be given a date earlier than that, and the defendant Jones cannot be held to have acquired by adverse possession a right to occupy to the line of the fence. So both the Morrissey and Jones enclosures remain subject to such a readjustment of the fences as will give the orator a reasonable and convenient way.

> *Decree reversed and cause remanded with mandate that the center line of the Rice survey be established as the easterly line of the way which the orator is now entitled to across the McKinty purchase; that the orator have, to the west of the line so established, a reasonable and convenient way, which way shall be of at least sufficient width to permit the passing by each other of wagons loaded with hay in the usual manner, but which shall not exceed two rods in width at any point; that the case be sent to a master to survey and establish the westerly limit of said way; that the several owners remove all obstructions between the lines so established within a time to be fixed by the Court of Chancery; and that the orator have his costs.*