CITY OF ALBERT LEA v. JENS P. NIELSEN and Others.[1]

May 31, 1900.

Nos. 12,144, 12,145, 12,146—(107, 108, 109).

Private Easement to Overflow Land—Abandonment—Use by Public.

A body of water constituting part of the source of a stream was artificially raised seven and one-half feet by the construction of a dam at its outlet, thereby causing the adjoining lands to be overflowed. The right to overflow such lands was secured by proceedings under the mill-

[1] Reported in 82 N. W. 1104.

dam act and by deeds from the owners. The dam was maintained and used for mill purposes for more than twenty years, and then, in 1889, abandoned by the parties who secured the easement. For more than twenty years prior to abandonment the public used the waters for the purposes of hunting, boating, fishing, and like uses. The citizens of respondent city platted streets and lots with reference to its changed condition, and the city expended large sums of money in improving the driveways upon its border, and in aiding to maintain the dam, and in building a public bridge across it. At the time of abandonment by the mill owners, in 1889, respondent assumed control of the dam, and thereafter kept it in repair, and during the year 1891 expended $50,000 in the erection of waterworks upon the bank of the lake. In 1894 appellants commenced, respectively, actions against the city for damages caused by overflowing their premises by means of the dam. *Held*:

## Private Title to Bed of Lake.

1. The title to the bed of the lake not having been in the state, the waters did not become public from the fact that the lake was artificially increased, and was incidentally used by the public and respondent during the life of the easement.

## No Estoppel of Riparian Owners.

2. The grantors of the easement were not estopped from asserting claims for damages after abandonment of the easement from the fact that without protest the public were permitted to enjoy the waters and the respondent to improve with reference to it for a period of more than twenty years prior to the abandonment.

## Same.

3. The grantors of the easement were not estopped from asserting claims for damages by not protesting against, and in permitting respondent city to assume control of, the dam after abandonment, and to erect its waterworks upon the bank of the lake.

## Injunction to Restrain Actions at Law.

4. Injunction will not lie to restrain several actions at law where there is involved no general principle conclusive as to them all, or where the complainant has not already established his right of defense at law.

Appeal by certain defendants from an order of the district court for Freeborn county, Kingsley, J., overruling a demurrer to the complaint. Reversed.

*J. A. Sawyer* and *John Anderson*, for appellants.

*H. C. Carlson, H. H. Dunn* and *C. S. Edwards*, for respondent.

LEWIS, J.[2]

Defendants appeal from an order overruling demurrers to plaintiff's complaint.

The facts set forth in the complaint are, in substance, as follows: That the plaintiff is and has been, since 1878, a municipal corporation under the laws of the state; that the several defendants, respectively, claim to be the owners of certain parcels of real estate, which are described as certain portions of surveyed land, each parcel constituting a portion of the bed of Fountain Lake; that prior to 1857 a small stream of southern Minnesota known as "Shell Rock" river had its source in small natural bodies of water known as "Fountain" and "Pickerel" lakes, and that such river and lakes were to a certain extent navigable, and were used by the public from the earliest settlement of the country for boating, fishing, hunting, and such uses as are usually incident to such public bodies of water; that in 1857 one George S. Ruble erected a dam at the outlet of Fountain lake, under the provisions of the territorial act approved February 26, 1857, and maintained the same, thereby raising the water of Fountain lake seven and one-half feet above its natural level, until 1867, when the dam was removed by a flood; that in 1867 George S. Ruble and Frances Hall reconstructed the dam under the authority of Sp. Laws 1867, c. 139; that the dam was erected in connection with embankments and a highway bridge, and that such dam, embankments, and bridge have ever since been maintained by said Frances Hall, George S. Ruble, or their grantees, heirs, or assigns, or by the plaintiff, to a height of seven and one-half feet above the ordinary level of Fountain lake; that the right to maintain said dam, and flow defendants' land above described, was duly and lawfully acquired by said George S. Ruble, his associates, heirs, and assigns, by virtue of the acts of the legislature above mentioned, and under and by virtue of the provisions of G. S. 1866, c. 31, known as the "Milldam Act," reference being had to the proceedings instituted by Hall and Ruble for such purpose on file in the office of the clerk of the district court of Freeborn county; that, in settlement of the legal proceedings thus commenced, deeds

[2] LOVELY, J., took no part.

of the right of flowage were obtained from the then owners of the land claimed by defendants, and that under such flowage deeds and the provisions of the milldam act Hall and Ruble acquired the right to maintain the dam at a height of seven and one-half feet.

The complaint further states that for more than twenty years prior to the commencement of this action the plaintiff had enjoyed the use of the waters of Fountain lake for fire and other public purposes; that lots and streets have been platted, laid out, and improved with reference to the lake shore as fixed by raising the waters by the dam; that large sums of money were expended by plaintiff in improving a public driveway around the lake, and in maintaining the embankment and dam; that the lake has become a public resort for boating, fishing, skating, etc.; that, as maintained by the dam at seven and one-half feet above the old level, the lake has become a pure and healthful body of water, whereas if the dam were removed, and the lake permitted to recede to its original state, marshy ground would be exposed, which would be a menace to the public health, besides depriving the public of the uses mentioned.

It further appears that in 1889 the mill used in connection with the dam was abandoned, and that since that time plaintiff has maintained the embankment and dam at the same height, and has constructed a system of waterworks at a cost of $50,000; that plaintiff was authorized by Sp. Laws 1878, c. 1, as amended by Sp. Laws 1889, c. 10, subc. 4, § 5, subd. 50 (p. 314), to regulate the flowage of the lake; that all of the improvements made by plaintiff were so made relying upon the fact that the lake in its then state was recognized by the public as a permanent body of water, and that the lake as enlarged by the dam was a body of public water, and recognized as such by the legislature in granting the right to Freeborn county to expend certain money for the construction of a bridge over the dam. It is further stated that the defendants knew that the city was from time to time expending large sums of money and making such improvements, but that they made no objection, and permitted the same to be done knowing that the public and plaintiff were acquiring valuable and permanent rights thereby; that if the dam were not maintained all of the improvements mentioned

would be rendered useless, and plaintiff and the public be greatly damaged; and that plaintiff has no adequate remedy at law.

It is further alleged that eight of the defendants have commenced separate actions against the plaintiff in the district court of Freeborn county for the recovery of damages by reason of its maintaining the dam, thereby overflowing defendants' premises, and that certain of the defendants are threatening to begin other actions for the like purpose.

The relief demanded by plaintiff is that the several defendants be restrained during the pendency of the action from prosecuting their several actions, and for permanent injunction; that the right to maintain the dam at its present height of seven and one-half feet, and the right to overflow so much of defendants' premises as may be thereby affected, be declared and decreed to be in the plaintiff. Defendants demurred to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action.

The respondent relies upon the following propositions:

First. That it appears from the complaint that Shell Rock river and Fountain lake were in their original state navigable; that the title to the body of the stream was in the state, and not in defendant; and the fact that the waters have been raised to their present level by artificial means does not change the original character of the lake. Hence the lake was, as constituted at the time of the commencement of defendants' actions for damages, a public body of water. The cases cited on this point are Mendota v. Anderson, 101 Wis. 479, 78 N. W. 185; Village v. Savoy, 103 Wis. 271, 79 N. W. 436. The Wisconsin cases rest upon the fact that the original purchaser bought with reference to an established line defining what were navigable and public waters, and that the right to raise the water by artificial means had become fixed by prescription. Here, however, it appears from the complaint that the lake never was meandered; that the owners took their land from the government according to the usual subdivisions of survey, without reference to any such lines; and it does not appear that any part of defendants' land was in the bed of the lake as it stood originally. Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, and Kray v.

Muggli, 77 Minn. 231, 79 N. W. 965, referred to by counsel, have no application here.

Second. It is next urged that because appellants stood by and permitted the city to expend money for a number of years in assisting to maintain the dam and bridge across it, and to improve its streets and driveways bordering on the lake in its new condition, for more than twenty years prior to the commencement of the damage actions, they are estopped from asserting any claim for damages. So far as the improvements made prior to the abandonment of the mill are concerned, it is a sufficient answer to state that during the time the easement to flow their lands was in force the defendants had no power to interfere. They had simply granted the right of flowage for mill purposes under the milldam act to Ruble, and, if others built and improved relying upon the permanency of Ruble's easement, they cannot complain of the results when that easement came to an end. Nothing is pleaded to show dedication, release, or waiver, only silence. During that time appellants were not only entitled to be silent; they were powerless to prevent the public from enjoying the incidental benefits of the easement of the mill owners to flow the defendants' land for mill purposes.

Third. It is further claimed that if the abandonment of the mill in 1889 brought the easement to an end, and the owners of the submerged lands thereby at once acquired the right to remove the dam, then by not doing so, but by permitting it to remain, and to be taken charge of by the city, which made the extensive improvements mentioned subsequent to 1889, the appellants are estopped from asserting any claim for damages.

Upon the abandonment of the mill, the parties to the easement, or their heirs and assigns, were placed in the same position as originally. The city was in the same position with reference to appellants as it would have been had the dam gone out with the flood, as in 1867, and Ruble and Hall abandoned their right to rebuild. The right of flowage would have terminated, and the city would have been compelled to resort to condemnation proceedings in order to acquire that right. It appears from the complaint that at that time plaintiff's charter was amended, giving it the right to control and regulate the flowage of the lake, and in Boye v. City of Al-

bert Lea, 74 Minn. 230, 76 N. W. 1131, this provision was construed, and it was held that such power was conferred upon the city by that act.

It has been held that where a party stands by and permits extensive improvements to be made affecting his premises he will be estopped from enjoining their continuation. But the appellants do not seek to enjoin the city from maintaining the dam. They merely ask to be compensated in damages, and the facts alleged are not sufficient to bring them within the rule of equitable estoppel as to damages. We are furnished with no citations tending to support this proposition. The actions for damages were commenced about four years after the city assumed control of the dam. There is no admission, express or implied, on the part of appellants that the city had the right to take possession of the dam and maintain it. There is nothing to show that the city acted upon any such admissions of appellants. All of the elements of equitable estoppel are wanting.

Fourth. Should the defendants be enjoined from prosecuting their actions for damages?

If it appeared from the complaint that defendants could not recover against the city upon any of the grounds urged by respondent, it would necessarily follow that the same result would be reached in each action, and if that were true there is every reason for bringing the controversy to a speedy end. The same right would be determined in each action, and the whole question could be settled in one. The authorities cited support this view. 1 Pomeroy, Eq. Jur. §§ 243–275. But we find that the complaint does not state facts which relieve the city from responding in damages, and injunction will not lie to restrain actions at law, where there is involved no general principle or question conclusive as to them all. The mere saving of expense is not sufficient. Sheldon v. Centre, 25 Conn. 224. A bill of peace enjoining litigation at law is allowable only when the complainant has already established his right at law, or where he claims a general or exclusive right, and several actions would lead to vexatious litigation. Lehigh v. McFarlan, 31 N. J. Eq. 730.

Order reversed.