CITY OF ALBERT LEA v. JENS P. NIELSEN and Others.[1]

May 17, 1901.

Nos. 12,618, 12,619—(65, 66).

### Injunction—Common Right or Title in Defendants.

Where a common right or a community of interest in the subject-matter of a controversy, or a common title, from which all of the defendants' separate claims, and all questions at issue between the parties plaintiff and defendants, have arisen, can be shown at the trial, an equitable action will lie to restrain and enjoin the several defendants from prosecuting separate actions at law against the plaintiff. *Held*, that under this rule a cause of action was stated in plaintiff's fourth amended complaint herein.

### Restraining Order.

*Held*, further, that, as the complaint stated a cause of action, it was not error for the court below to cause an order to be issued restraining and prohibiting each of the said defendants from proceeding further in his action at law pending the disposition of this action in equity.

Action in the district court for Freeborn county to establish

[1] Reported in 86 N. W. 83.

plaintiff's right to maintain an existing dam and lake in Shell Rock river, within the city limits, and to restrain defendants, who claim ownership of the overflowed lands, from interfering with said dam or with said lake. Plaintiff also prayed that defendants be enjoined and restrained from prosecuting certain pending actions brought by them severally against plaintiff for damages because of such overflow and from instituting any such actions in the future. From an order, Kingsley, J., overruling a demurrer to the complaint, defendants Nielsen and others appealed. Thereafter on application of plaintiff a temporary writ of injunction pending this action was granted. From an order, Kingsley, J., denying a motion to dissolve the injunction, defendants Nielsen and others appealed. Both orders affirmed.

*J. A. Sawyer* and *John Anderson*, for appellants.

*H. H. Dunn*, *H. C. Carlson* and *C. S. Edwards*, for respondent.

COLLINS, J.[2]

This is the second appearance of this case. The facts, as they were stated in the former complaint, will be found set forth in 80 Minn. 101, 82 N. W. 1104. After the case was remanded to the district court, application was made by the plaintiff city to amend the complaint theretofore held insufficient. The application was granted, and thereafter the defendants demurred to the amended complaint upon the ground that it did not state facts sufficient to constitute a cause of action. Other alleged grounds of demurrer were presented, but we need not refer to them specially. The court below overruled the demurrer, and defendants appealed.

It seems unnecessary for us to set out in full the allegations in the present complaint, but it is essential that we state a portion thereof,—those which, in our opinion, are of controlling importance here. After some formal matters, it is alleged that Ruble and Hall, between the years 1857 and 1867, by and with the consent of the then owners of the lands and premises involved, and at the special instance and request of said owners, erected and constructed the dam, embankments, and approaches in question, to the height of 7½ feet above the ordinary stage of water in the river;

[2] LOVELY, J., took no part.

that such dam, embankments, and approaches so built were substantial and permanent structures, so intended to be by all of the parties, and were so erected and constructed with the intention and purpose of all of said parties to retard the waters of the river, and cause the same to flow back, and form a permanent lake, thereby producing water power, and a permanent navigable body of water, to be used for certain specified public purposes; that there was erected and constructed by the same parties a public highway and bridge above, over, and across the dam, said embankments, and approaches, for the purpose of accommodating public travel, and giving access to the plaintiff city and the surrounding country, and to the lands of the defendants and their grantors; that for more than twenty years prior to the commencement of this action the owners of the several tracts of land mentioned, being the defendants and their grantors, together with other landowners, set apart, dedicated, and opened for the use of the public the waters of the lake, and the lands flowed and submerged thereby, for various public purposes and uses incident to navigable bodies of water; and that the said owners then and there jointly dedicated, set apart, granted, and gave unto the state and the public, and to the plaintiff city, forever, the waters of the lake so created, and the lands so flowed and submerged thereby. It is also alleged that these waters and the lands so flowed and submerged were then and there duly and jointly accepted by the public and the plaintiff city and the state; that the parties last named entered and took possession of all of the same, and have constantly and continually used and occupied all of the same, for the public purposes aforesaid, with the full knowledge of the then owners and the defendants, and by their invitation and request.

There are other allegations as to the performance of public work from time to time by the public authorities; that the dam has been continuously and always maintained at the height of $7\frac{1}{2}$ feet, and that it, and the embankments, approaches, bridge, and highway, have been repaired and improved from time to time by the public authorities, with the consent of the defendants and their grantors, and at their instance and request; that since the spring of 1889 the city has assumed exclusive care

and control thereof; that during all of said times defendants and their grantors, for good and valuable considerations moving to them, have waived and released all rights to the submerged lands and the waters thereon, and all right to assert any title or interest therein. There are other allegations tending to show the various acts performed by the city and its inhabitants and the public, with the knowledge of the defendants and their grantors, under which the plaintiff insists upon its right to maintain the dam at the height of 7½ feet, none of which need be set forth in detail in order to sustain the conclusion we have reached. The complaint also contains full and adequate allegations as to the bringing of the various suits by the defendants, their purpose being to obtain money judgments for the damages alleged to have occurred by reason of trespasses by the plaintiff in maintaining the dam. These are formal matters, which need not be further detailed.

1. We are of opinion that the allegations wherein are set forth the affirmative acts of defendants and their grantors are sufficient to constitute an equitable cause of action. It is averred that the dam, embankments, and approaches were built and erected by Ruble and Hall, not only with the consent of the persons then owning the land which was to be overflowed, but at their special instance and request, for the specified public purpose and with an intent to create a permanent navigable body of water, with a 7½-foot height at the dam; that the state, the city, and the public generally then took possession, and have continually since used and occupied said body of water, for the purposes for which it was designed, not only by invitation, but at the request of such owners, the present defendants, and other persons; and that, for good and valuable considerations to them moving, said parties then waived and released all rights to the submerged lands, and all right to assert title or claim whatsoever thereto. There are other allegations, which need not be repeated, and, taking the complaint as a whole, it seems to embrace and exhibit all that is required in order to establish by proof all the essential elements of a common-law dedication of the property to the public, an acceptance by the latter, and steady, uninterrupted, and continual public use ever

since the dam, embankments, and approaches, including the highway and bridge over and across these structures, were built, for more than twenty years last past. The dedication itself is pleaded in clear and unmistakable terms, and so is its acceptance by the plaintiff city and the general public.

We are of the opinion that in this respect the complaint is brought within the rules laid down in Village of Buffalo v. Harling, 50 Minn. 551, 52 N. W. 931. If the allegations are supported by competent evidence, the defendants are estopped by their acts and conduct (which, on paper, amount to a complete dedication of the land in controversy to a public use) from asserting that the city has no right to maintain the dam at the height at which it is alleged to have been maintained for this period of more than twenty years. Certain it is that on the face of the complaint the doctrine of estoppel in pais, or equitably, is applicable, if it can ever be in a case where owners of land have intentionally dedicated it to the public, that it may be overflowed, submerged, and made into a public and navigable body of water, and the intended beneficiary, the interested municipality, and private parties have afterwards acted with reference to such a dedication.

As before stated, it is claimed by counsel for appellants that, on the case as set out against the defendants, the court below had no jurisdiction in an action to quiet the title and enforce the rights of the plaintiff city to maintain the dam and lake, to enjoin the defendants from further prosecuting actions at law for the recovery of damages. A common right is claimed as against each and all of the defendants, based upon acts committed by them, or by their grantors, in respect to the erection and construction of the obstructions placed in the river by Ruble and Hall prior to 1867, the immediate effect of which was to raise the water $7\frac{1}{2}$ feet at the obstructing point; the result being that the water was raised at once over all of the submerged lands to the depth at which it has since been maintained. It is sufficiently shown by the pleading that this right may have been acquired, and may rest upon the acts of the defendants or their grantors, performed simultaneously and jointly. Under these allegations, it might well be shown that the persons whose lands were submerged acted to-

gether, and were in privity in respect to the building of the dam, the embankments, the highway, and the bridge thereon, and that their acts were of such a nature and character as to be capable of proof affecting and binding all. Evidence might be introduced showing the joint and united acts of the persons who then owned and occupied the land, now covered with water, or there might be testimony from which it could be found that, although acting separately, they had a common and joint purpose, and there existed a privity of interest which united them, precisely as if they had acted alike and simultaneously.

A common right, or a community of interest in the subject matter of the controversy, or a common title, from which all of the defendants' separate claims and all questions at issue between the parties have arisen, may be shown at the trial. If so, the action is brought directly into the class called the "fourth" by a leading text writer upon equity jurisprudence, and squarely within one of his propositions. 1 Pomeroy, Eq. Jur. § 268. See also Sharon v. Tucker, 144 U. S. 533, 542, 12 Sup. Ct. 720.

Again, equity jurisdiction has sometimes been exercised by the courts to prevent a multiplicity of suits where there was merely a community of interests in the questions of law and of fact involved, or in kind and form of remedy demanded and obtained by or against each individual. Mayor v. Pilkington, 1 Atk. 282; Board v. Deyoe, 77 N. Y. 219; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418; Stockwell v. Fitzgerald, 70 Vt. 468, 41 Atl. 504.

2. After passing upon the demurrer, the court granted an application of plaintiff's counsel for a temporary writ enjoining and restraining each of the defendants from any further prosecution of the pending actions at law during the pendency of this action, and until a further order of the court. Thereupon, and after appealing from the order overruling the demurrer, defendants' counsel moved to dissolve this temporary writ. The motion was denied, and a part of the moving papers stricken out of the record. Defendants' counsel then appealed from the order made upon this denial.

It is unnecessary for us to decide the question of practice raised here as to the right of defendants to appeal from the last-men-

tioned order after appealing from the order overruling the demurrer, and while that appeal was pending here. As we have held, the complaint stated a cause of action, and it must follow, as a matter of course, that it was not error for the court below to issue a restraining order (for that was all that the temporary writ amounted to) pending the disposition of this action. If that could not be done, the present proceeding would be wholly unavailing and useless. No constitutional rights of defendants are taken away by the mere postponement of their actions at law; for if plaintiff is herein successful they are not entitled to an assessment of damages, and if unsuccessful the actions at law will duly proceed.

The order overruling the demurrer, as well as the order denying the motion to dissolve the injunction, stand affirmed.