ILLINOIS CENTRAL RAILROAD COMPANY *v.* JAMES
GARRISON ET AL.

| 81 | 257 |
| 683 | 717 |
| 81 | 257 |
| f91 | 784 |
| 81 | 257 |
| 94 | 506 |

EQUITY.    *Jurisdiction.    Trespasses.    Injunction.    Multiplicity of suits.*
   Where a number. or plaintiffs have separately sued the same de-
   fendant at law in actions of trespass and his liability in each de-
   pends upon the same facts, and the act of which complaint is
   made in each of the suits is a constantly recurring one, the
   plaintiffs intending to continue to sue, equity has jurisdiction at
   the suit of defendant to enjoin the multiplicity of suits and cause
   them to be consolidated.

From the chancery court of Madison county.
HON. HENRY C. CONN, Chancellor.
   The railroad company, appellant, was complainant in the
court below; Garrison and six others were defendants there.
The appellant filed its bill to enjoin defendants from prosecut-
ing their seven different actions in a justice of the peace court,
and the equity relied on in the bill is that these different suits,
prosecuted by seven different plaintiffs, acting by the same
attorney, constitute a multiplicity of suits, which it is entitled
to have enjoined.   The bill further alleges that it is filed for an
injunction to restrain a multitude of suits pending, and others
which are threatened, every one of which is by persons pecuni-
arily irresponsible, and based on what they themselves charge
to be an injury which is constantly recurring.   The bill prays
for a decree restraining plaintiffs from further prosecuting these
and other suits growing out of the same facts, and consolidating
them all in the chancery court.   Defendants all answered the
bill.   The cause was heard on the bill, answer and affidavits.
On the hearing the chancellor rendered a decree dissolving the
injunction, on the idea that equity did not have jurisdiction.
The complainant appealed to the supreme court.

*Mayes & Harris* and *J. M. Dickinson*, for appellants.

We do not propose to assail the doctrine of the case of *Tribette* v. *Railroad Co.*, 70 Miss., 182. In passing, we have to say that we do not concede that the *Tribette case* was properly decided; we think, and if it were necessary would claim, that the criticism made upon Mr. Pomeroy's text in that case is erroneous, and we think Mr. Pomeroy was correct; the bill of injunction should have been maintained.

But for purposes of this argument we accept the view of the *Tribette case;* and we claim that the railroad company has brought itself, by the averments of its bill, and which averments are not in fact denied in the answer, or in fact controverted by the affidavits, within the rule laid down by the *Tribette case* itself. Because in that case the opinion of the court (see p. 188) clearly states that, in order to maintain an injunction bill on the ground of multiplicity of suits, "there must be some recognized ground of equitable interference, or some community of interest in the subject-matter of controversy, or a common right or title involved to warrant the joinder of all in one suit, or there must be some common purpose in pursuit of a common adversary, where each may resort to equity, in order to be joined in one suit; and it is not enough that there is a community of interest merely in the question of law or of fact involved, as stated by Pomeroy in sec. 268."

Now the facts which differentiate this case from the *Tribette case* are these: first, in the *Tribette case* the damages claimed were such damages as were caused by a fire, and the setting of the fire by the railroad company was an incident which was over and done with when it happened, and in its very nature was not a continuing condition, and in its very nature could not possibly breed other and further and indefinitely postponed litigation; secondly, in the case at bar, there is "some community of interest in the subject-matter of the controversy," and there is "a common right or title involved;" such community of interest in the subject-matter of the controversy

being the community of interest which all of the plaintiffs enjoined have in the overflow by the railroad embankment of the valley of Bear creek; and the common right or title involved, being the right or title of the railroad company to maintain its track and roadbed as the same has been by it under its charter constructed. Such community of interest on the part of the plaintiffs is one, in its essential nature, permanent and indefinitely continuing; and such title or right of the railroad company which is asserted by it against all of these plaintiffs in common, is one also, by its very nature, permanent and indefinitely continuing.

There is, therefore, the very widest difference in the question here raised, and that question which was raised in the *Tribette case.* As we have pointed out above, it is not only true that the doctrine of the *Tribette case* is reconcilable with the equity of this bill, but it is also true that the equity of this bill is expressly recognized by the opinion of the court in that case.

There is plenty of authority for this bill. The equities to which we especially invite the attention of the court are three:

First. There is a repeated litigation brought by the same plaintiffs against the complainant; that is to say, it is admitted that the complainant is now being again sued because of its alleged obstruction of the valley of Bear creek by the same identical plaintiffs who sued it before for the same obstruction, although they allege that the railroad track has been to some extent elevated since, and there is an explicit admission in the answer that these same plaintiffs will continue to sue as often as their property shall be overflowed in the future;

Second. It is not only true that there is repeated litigation at the hands of the same parties brought and threatened, but it is also true that the complainant has a common right against the property of different parties, the establishment of which at law would regularly require separate actions by it against each of those parties, or would require separate defenses by it against each of those parties to an action brought; and,

Third. The bill shows that all of this litigation repeatedly and variously brought is persistently and constantly brought by parties who are insolvent and are not responsible for court costs.

The case, therefore, clearly comes under those categories which Mr. Pomeroy in his work on Equity Jurisprudence, vol. 1, sec. 245, sets forth as his "second" class and his "fourth" class, to which the court is referred. See, also, 1 Pomeroy, secs. 253, 255 and 256, and note. The foregoing citations to Pomeroy's Equity are to the edition of 1881.

We call the attention of the court especially to the case of *City* v. *Neilsen*, 83 Minn., 246; see, also, *Smith* v. *Bivens*, 56 Fed. Rep., 352; *R. R. Co.* v. *Robinson*, 132 Cal., 408; *R. R. Co.* v. *Kuteman*, 54 Fed. Rep., 547; *Painter* v. *Drane*, 2 McArthur, 163; *S. Car. R. R.* v. *Steiner*, 44 Ga., 546; *Guess* v. *Ry. Co.*, 67 Ga., 215; *Greedep* v. *Franklin Co.*, 30 Ark., 101; *Carney* v. *Hadley*, 32 Fla., 344; *Ballou* v. *Inhabitants*, 4 Gray (Mass.), 324; *Shimer* v. *Morris, etc., Co.*, 27 N. J. Eq. (12 C. E. Green), 364; *Mobile* v. *R. R. Co.*, 84 Ala., 115; *Smith* v. *Gardner*, 12 Or., 221; *Ellis* v. *Wren*, 84 Ky., 254; *Wheelock* v. *Nunan*, 108 N. Y., 179; *Galway* v. *Ry. Co.*, 128 N. Y., 132; *Papinheim* v. *Ry. Co.*, 128 N. Y., 436; *Teneyck* v. *Sjoburg*, 68 Ia., 625; *Murphy* v. *Lincoln*, 63 Vt., 278; *Sharon* v. *Tucker*, 144 U. S., 533; *Ry. Co.* v. *Bradley*, 108 Wis., 467; High on Injunctions, secs. 1470, 1481, 1512 to 1524.

*Brame & Brame* and *E. A. Howell*, for appellees.

In *Learned* v. *Hunt*, 63 Miss., 373, an injunction at the suit of several owners was sustained to abate a continuing nuisance. But, this was because either of the parties alone could have resorted to equity. No one pretends that the defendants in this case, either separately or collectively, could have gone into equity to recover damages.

In *Warren Mills* v. *Seed Co.*, 65 Miss., 391, it was held

that continued and repeated trespasses could be enjoined in equity at the suit of the injured party, the remedy by suits at law for the different trespasses not being adequate. So much for the decisions in this state prior to the case of *Tribette* v. *Railroad Co.*, 70 Miss., 182, when the question involved here was most carefully elaborated and fully considered and settled, by a decision of this court, which, in view of the great ability and clearness of the opinion, has been recognized and quoted by the courts and text writers as containing a most masterly and exhaustive statement of law on the subject in hand. Of course, in that decision the prior cases in this court were carefully examined and considered, and if there had been any ground for the contention now made that a court of equity would have jurisdiction to award damages if the trespass were continuous, it would have been stated.

In *Johnston* v. *Stone*, 71 Miss., 593, it was held that a court of equity did not have jurisdiction on the ground of preventing multiplicity of suits to enjoin in one bill an action of ejectment for land and replevin for personal property and the deed to the land, although all the controversies grew out of and were connected with the same transaction, and this was upon the ground that the remedy at law was adequate.

Since the *Tribette case* was decided, our state constitution has been revised, and at great length, especially with reference to the jurisdiction of courts. By sec. 160 additional jurisdiction was conferred upon the chancery courts to decree rents and compensation for improvements and taxes, and in all cases where the courts had previously exercised jurisdiction auxiliary to courts at common law, it was given power to exercise such jurisdiction and, to grant the relief sought although the legal remedy may not have been exhausted or the legal title established by suit at law. But no thought of disturbing the rule established by the carefully considered decision in the *Tribette case*, entered into the minds of the constitutional convention. We take it, therefore, that opposite counsel will not, at least

by any direct attack, assail the soundness of that decision. This we would consider utterly futile. Therefore, we assume that counsel will endeavor in some way to distinguish this case from that; but it simply cannot be done. The controlling principle announced by the court must necessarily determine this and all similar cases where the effort is nothing more nor less than that of a party who is sued at law in actions for damages by different persons to consolidate the suits in equity, to the end that there may be a so-called "authoritative decision." The effort is to compel many different plaintiffs who have different and distinct causes of action to unite in one suit, the object of the railroad company being to deprive them of the right of trial by jury and to compel each suitor to be burdened with the costs, inconveniences and delays incident to the investigation of the merits asserted by other suitors who happen to have similar cases against the same defendant. If two could thus be unwillingly united, a thousand could be so joined.

The principle contended for by the railroad company being conceded, then if it has a locomotive that continuously emits sparks and thus causes fires along the entire line of the railroad, all the complaining property owners could join in one suit or be joined in one suit, for the purpose of getting an "authoritative decision" on the main question of fact, whether or not the locomotive is defective. By such a scheme, hundreds of property owners scattered over hundreds of miles could be joined as parties defendant and compelled to litigate *en masse* in the chancery court.

If the above is not a fair illustration, let us suppose that the offending locomotive was run not merely one trip but was continued in use, resulting in fires every trip, so that it could be said that the trespasses were continuing, and hence that the injured persons would be compelled to bring successive suits for damages. Then we would have an exact counterpart of the present bill by which all persons who might bring successive suits for the damages sustained by the recurring wrong could

be joined in one bill and hauled into the chancery court to take the chances of securing justice in the general mix up, at some unknown time in the future. There is little or no occasion for citing authorities. These were most carefully and elaborately examined in the *Tribette case* as the opinion and the reported briefs of learned counsel in that case will show. One of the same counsel who appeared for the railroad company in that case represents it here. He left no stone unturned in the presentation of the case in his efforts to establish the jurisdiction of the court. Scores of decisions might be cited. We will refer to a few only by way of illustration. *Van Aukin* v. *Damier,* 27 Or., 150; *Sheldon* v. *School District,* 25 Conn., 224; *Lea* v. *Neilson,* 80 Minn., 101; *Hale* v. *Allinson,* 102 Fed. Rep.; *Railroad Co.* v. *McFarland,* 31 N. J. Eq., 706.

Argued orally by *J. B. Harris* and *Edward Mayes,* for appellant, and by *L. Brame* and *E. A. Howell,* for appellees.

WHITFIELD, C. J., delivered the opinion of the court.

The case of *Tribette* v. *Railroad Co.,* 70 Miss., 182 (12 South., 32; 19 L. R. A., 760; 35 Am. St. Rep., 642), is a very different case from this one. There the damage resulted from a single past trespass, completed and over with; hence not to occur again in the future. The opinion of the court in that case expressly stated that the jurisdiction of the chancery court to enjoin, on the part of one, suits of many, or *e converso,* is maintainable where there is a "community of interest in the subject-matter of the controversy," or where there "is a common right or title." The case of *Brinkerhoff* v. *Brown,* 6 Johns., ch. 139, illustrates the exercise of the jurisdiction where there is a common right on the part of one against many, as does *Pollock* v. *Institution,* 61 Miss., 296, and these two cases are squarely in point. The case of *City of Albert Lea* v. *Nielsen,* 83 Minn., 246; 86 N. W. 83, is directly in point, also on the only question involved—whether the jurisdiction ex-

ists.   We do not now consider the merits of the case—we inquire
only whether the chancery court has the jurisdiction; and the
case in 83 Minn., 86 N. W., is directly in point on that prop-
osition.   The *Tribette case* holds that the jurisdiction is not
exercisable, as maintained by Mr. Pomeroy, where the com-
munity of interest consists merely in the fact that the same
question of law and similar questions of fact are involved in
the several cases.   We do not rest the exercise of the jurisdic-
tion here on that proposition, but on the express holding in the
*Tribette case* that the jurisdiction exists when there is "a
common right or title," or "a community of interest in the
subject-matter of controversy."   We hold that the jurisdiction
is maintainable in this case for the following reasons: First, this
is not the case of a single past trespass, over with when it oc-
curred, for all time, as was the *Tribette case*.   The very first
sentence in the brief of the learned counsel for appellant in
that case (70 Miss., 182; 12 South., and 19 L. R. A., 660, 35
Am. St. Rep., 642) shows that the very point on which that case
turned was that the fire was a "single past trespass," and on
page 183, 70 Miss., page 33, 12 South., and 19 L. R. A. 660,
35 Am. St. Rep. 642, the authorities are cited to that point,
whereas here (*a*) there were some ten suits brought in 1899,
some of which were compromised, and some of which were
tried and won by the railroad; (*b*) there were twenty-three
different claims propounded against the railroad in 1892, all
represented by seven plaintiffs, who sued for themselves on
their own seven claims, and also for the other claims which had
been assigned to them; (*c*) it further appears that some of the
plaintiffs in 1899 are also plaintiffs here, bringing new suits
grounded on substantially the same state of facts; (*d*) the par-
ties now suing expressly declare that they expect to bring new
suits indefinitely in the future; (*e*) and they are all averred to
be insolvent and unable to pay court costs.   In every one of
these cases—past, present, and future—the liability of the
railroad company depends upon whether it has properly con-

structed its railroad track. The determination of that question will settle all cases so long as the embankment remains unchanged in its condition. Here there is plainly a "common right" asserted by the railroad against all these various parties, and *Tribette* v. *Railroad Co.*, in such case maintains the jurisdiction. Surely, on these facts, the jurisdiction of the chancery court to convene all the parties in one suit, and to determine therein the single question on which liability, past, present and future depends so as to prevent this endless multiplicity of suits, with its attendant useless consumption of time and costs, is too well settled by modern authorities to be doubted. See authorities in brief of counsel for appellant, and in note of Mr. Freeman to *Woodward* v. *Seely*, 50 Am. Dec., at page 453. The case of *Pollock* v. *Savings Inst.*, expressly maintains the equitable jurisdiction in this class of cases. See especially, pages 296, 297, 61 Miss., and authorities cited. This case falls squarely within Mr. Pomeroy's fourth class (sec. 255, vol. 1, 2d ed.). *Pollock* v. *Savings Inst.*, went far beyond *Bishop* v. *Rosenbaum*, 58 Miss., 84, as therein expressly pointed out. See especially, *Insurance Co.* v. *Van Cleave* (1901), 191 Ill., 410 (61 N. E., 94); *Smith* v. *Dobbins*, 87 Ga., 303 (13 S. E., 496).

Of course, we say nothing upon the merits of the case. That is for the chancery court on final hearing. We determine the only question now before us—that equity has jurisdiction of the case made by the bill below.

*Decree reversed, injunction reinstated, and the cause remanded.*