STATE ex rel. BROOKS–SCANLON LUMBER COMPANY v. KNIFE FALLS
BOOM CORPORATION and Others.[1]

November 17, 1905.

Nos. 14,434—(35).

**Misjoinder of Causes.**

The test in an equitable action, whether several causes of action are improperly united in the complaint, is whether all the matters alleged therein could have been included in a bill in equity under the old practice without making it multifarious. If so, they may be properly united in one complaint under our code practice.

**Bill in Equity.**

An equity bill is not multifarious, where one general right only is claimed by it, although the defendants have only separate interests in distinct questions which arise out of or are connected with such right. All of the defendants, however, must be affected in some respect by the action or by some part thereof; but it is not necessary that all should be equally affected.

**Complaint.**

Complaint herein construed, and *held*, that several causes of action are not improperly united therein.

Appeals by defendants from an order of the district court for Carlton county, Cant, J., overruling separate demurrers to the complaint interposed by the defendants on the ground that several causes of action were improperly united. Affirmed.

*H. Oldenburg, W. P. Warner, John R. Van Derlip,* and *Wm. B. Phelps,* for appellants.

As to the Boom Corporation, the suit is based upon and affects (and is brought to regulate and define) its acts and functions, as a public agent; while, as to all other defendants, it is based upon their several, individual acts, and seeks to have their respective private rights defined, and their exercise regulated. None of the other defendants has any part in the determination of the duties of the boom corporation or in the determination of the rights or wrongs of the other mill com-

[1] Reported in 104 N. W. 817.

panies. Since more than one cause of action is stated and since each does not affect all the parties defendant, the demurrers should be sustained. G. S. 1894, §§ 5131, 5228, 5232, subd. 5. Section 5260, subds. 1, 7; Gertler v. Linscott, 26 Minn. 82; Pomeroy, Rem. & Rem. (2d Ed.) §§ 453, 473; People v. Oakland, 118 Cal. 234; Trowbridge v. Forepaugh, 14 Minn. 100 (133); Berg v. Stanhope, 43 Minn. 176; Langevin v. City of St. Paul, 49 Minn. 189; Anderson v. Scandia Bank, 53 Minn. 191; City of Albert Lea v. Nielsen, 80 Minn. 101, 83 Minn. 246; State v. Kingsley, 85 Minn. 215; Hanna v. Duxbury, 94 Minn. 8.

*Ripley & Lum, J. N. Searles, Washburn, Bailey & Mitchell*, and *John A. Keyes*, for respondent.

The complaint does not improperly unite several causes of action. The action is, in its nature, equitable. 15 Am. & Eng. Enc. (1st Ed.) 947, and cases cited; New York v. Schuyler, 17 N. Y. 592, 604; Pomeroy, Rem. & Rem. (2d Ed.) 507; Lockwood v. Lawrence, 77 Me. 297; Curran v. Campion, 85 Fed. 67; Brown v. Guaranty Trust & S. D. Co., 128 U. S. 403, 412; Mayor of York v. Pilkington, 1 Atk. 282; Thorpe v. Brumfitt, 8 L. R. Ch. App. 650; Woodruff v. North Bloomfield G. M. Co., 8 Saw. 628.

The complaint sets out but one cause of action and arises out of facts all connected with the same transaction. 1 Beach, Mod. Eq. Pr. §§ 115, 118; 1 Daniell, Ch. Pr. (4th Ed.) 334, et seq.; People v. Gold Run, 66 Cal. 138; Hillman v. Newington, 57 Cal. 56, 62; Miller v. Highland, 87 Cal. 430; The Debris Case, 16 Fed. 25; Draper v. Brown, 115 Wis. 361; Bliss v. Grayson, 24 Nev. 422; Lockwood v. Lawrence, supra; Varick v. Smith, 5 Paige, Ch. 137; Connecticut v. Olcott, 65 N. H. 290.

START, C. J.

This is an equitable action by the state, on the relation of the Brooks-Scanlon Lumber Company, against the defendants, to determine the relative rights of the public, the relator, and the defendants to the use of the St. Louis river, and to enforce them. The defendants severally demurred to the complaint on the ground that several causes of action were improperly united therein. The trial court made its order overruling the demurrer, and the defendants severally appealed.

The here material allegations of the complaint, briefly stated, are to the effect following: The relator and the defendants are each a corporation duly organized under the laws of this state. The St. Louis river, hereinafter referred to as "the river" is a navigable stream for the floating and driving therein of logs and lumber, and has been so used for more than fifty years, and still is. The defendant Knife Falls Boom Corporation, hereinafter referred to as the "Boom Company," by virtue of Sp. Laws 1872, p. 454, c. 106, and Sp. Laws 1885, p. 269, c. 98, was authorized and required to construct and maintain booms in the river within towns 49 and 50, range 17, in the county of Carlton sufficient to receive, secure, and deliver all logs and lumber that may come or be driven from the river and its tributaries within the limits of such boom privileges; further, to take the entire possession and control of all such logs and lumber, and boom, scale, and deliver them to the owners thereof, as provided by such special laws, for which service it is authorized to charge a fee of not more than twenty-five cents per thousand feet of such logs and lumber; and, further, that if any logs or lumber are unreasonably detained by the Boom Company by reason of inadequate facilities for handling them it shall be liable for all damages therefor.

The upper limit of the river over which the Boom Company was so granted sole control for the purpose of log navigation is a short distance below the mouth of the Cloquet river, one of the tributaries of the river, and the lower limit thereof is some fifteen miles downstream, at a point a few rods below the dam of the defendant Northwestern Paper Company in the village of Cloquet.

The Boom Company in the year 1872 erected, and has ever since maintained and operated, certain structures in the river about seven miles below the limit of its territory for the purpose of sorting the logs of different owners, so that the same could be delivered to each owner, and as a part of the log-sorting works the entire stream is and has been divided by it into trails leading down the river a distance of a mile or more. The trails are so arranged in connection with the sorting works that the logs of different owners, after passing through the works, can be diverted into different trails, where the logs destined for different owners are gathered and retained while being driven to points further down the stream.

At the village of Cloquet, immediately below the termination of the trails, the defendants Cloquet Lumber Company, Northern Lumber Company, Johnson-Wentworth Lumber Company, and Northwest Paper Company, have certain mills, booms for sorting logs, and dams, as follows, to wit: On the right bank of said stream the Northern Lumber Company has two sawmills, and below those mills on the same side of the river is a mill owned and controlled by the Cloquet Lumber Company, and below that and on the same side of the river is the mill of the Johnson-Wentworth Lumber Company, and below that and on the same side of the stream is the paper mill of the Northwest Paper Company. For the purpose of receiving and holding logs, or pulp wood destined to be manufactured or handled at these several mills, the Boom Company and its codefendants owning and operating such mills have divided the river, which is at that locality of the width of about five hundred fifty feet, into trails and storing booms or pockets by means of piling connected with floating booms and movable sheer booms and secondary sorting works.

The complaint then sets out in detail the manner in which the defendants have divided or parceled out the river among themselves, and the piling, trails, storage booms, and other structures they have severally placed in the river with the consent of the Boom Company, and the extent and the capacity thereof, and how their operation injuriously affects the rights of the relator and others to have their logs and lumber come down the river through the fifteen miles thereof so controlled by the Boom Company, and especially that the Boom Company arbitrarily discriminates in favor of its codefendants, by discontinuing, for their accommodation, its business of sorting from the common mass in the river the logs of the respective owners and sending them down the stream. This is done whenever the trails and storage booms of its codefendants are full of logs, with the result that the intermingled mass of logs in the stream above its sorting works are unreasonably detained, and the relator and others are deprived of their right to the reasonable use of the river for the transportation of their logs. The relator in the year 1901 became the owner of large tracts of timber tributary to the river above the limits of the Boom Company, and established its sawmill on the river below such limits, and all of its logs and lumber coming into the possession and control of the Boom Com-

pany within its limits are so detained therein for an unreasonable length of time by the structures of the defendants in the stream and the operation thereof.

The complaint also alleges that each defendant owns in severalty the structures placed in the river and operated by it, and sets out the manner in which each delays the operation of the Boom Company in the discharge of its duties and obligations to the relator and to the public having occasion to use the river for the purpose of floating their logs and lumber. The defendants, however, heretofore have, and still do, co-operate and combine together to maintain the continued existence of the aforesaid sorting works, trails, booms, dams, and other structures, and will continue to maintain the same and manage the same as alleged, to the delay and injury of the relator and all others having occasion to use the stream as a highway for forest products, unless restrained by the court. It is not practicable to liquidate the damages sustained by the relator and others desiring to float logs down the river through limits of the Boom Company by reason of the unreasonable detention thereof by the structures so placed in the river and operated by the defendants, and, were it otherwise, such damages could only be recovered by a multiplicity of suits.

The complaint is voluminous, and it is not practicable here to state all of its allegations in detail. Therefore we have attempted to state only enough thereof to indicate in a general way the subject-matter and purpose of the action, as a basis for determining whether several causes of action are improperly united. The relief prayed for by the complaint is to the effect that the court make inquiry into and determine the boundary line between the public right in the river within the territory of the Boom Company and the private right of the several defendants, and by decree regulate the common use of the river, and determine the extent of the respective rights of the relator and others navigating the stream with their logs or forest products, and the extent to which such navigation can be lawfully interfered with by the defendants, or any of them, whether by the existing sorting works, trails, booms, dams, and other structures, or otherwise, and, further, that the defendants and each of them be enjoined from maintaining and operating the several structures in the river within the limits thereof controlled by the Boom Company in the manner alleged in the com-

plaint, whereby the logs of the relator and of the public are unreason-ably detained by the Boom Company.

Counsel for the defendants, in support of their several demurrers, urge that the complaint, correctly construed, alleges several independ-ent causes of action against several defendants, which are not included in the same transaction or transactions connected with the subject of the action. If this be the proper construction of the complaint, it fol-lows that several causes of action are improperly united in the com-plaint. The authorities cited by the defendants fully support this con-clusion. While there are allegations in the complaint which, if con-sidered separately, would seem to justify such construction, yet, when all of the material allegations are construed together, it is clear that the claimed construction is not the correct one. This is not an action at law for the recovery of damages, but one to secure equitable relief only. The test in an equitable action, whether several causes of action are improperly united in the complaint, is whether they could have been included in a bill in equity under the old practice without mak-ing it multifarious. If so, they may be properly united in a complaint under our code practice by virtue of G. S. 1894, § 5260.

A bill in equity is not multifarious, where one general right only is claimed by it, although the defendants have only separate interests in distinct questions which arise out of or are connected with such rights. All of the defendants, however, must be affected in some respect by the action, or by some part thereof; but it is not necessary that all should be equally affected. North v. Bradway, 9 Minn. 169 (183); Fish v. Berkey, 10 Minn. 161 (203); Palmer v. Tyler, 15 Minn. 81 (106); Jones v. Morrison, 31 Minn. 140, 16 N. W. 854; Foster v. Landon, 71 Minn. 494, 74 N. W. 281.

The case of North v. Bradway, supra, is the original and leading case in this state on the subject of what does and what does not con-stitute an improper joinder of action in an equity bill, and it fully sus-tains the rule we here state. The action in that case was brought by judgment creditors against their debtor and his several grantees to subject to the payment of their judgment certain property, parts of which the debtor by separate transactions and conveyances had transferred to his codefendants in severalty for the purpose of defraud-ing his creditors. A demurrer was interposed on the ground that sev-

eral causes of action had been improperly united. The court overruled the demurrer, for the reason that one general right only was claimed by the complaint, namely, the right of the plaintiffs to subject the debtor's property, which he had transferred to defraud them, to the payment of their judgment, and, further, that although the several grantees respectively took by independent conveyances and transactions, and there was no joint fraud in any one transaction, yet the grantees were severally interested in and affected by the assertion of the plaintiff's right to the extent of their several conveyances. This case has been repeatedly cited and approved by this court, and it has never been overruled, directly or indirectly.

The case of City of Albert Lea v. Nielsen, 80 Minn. 101, 82 N. W. 1104, cited by defendants is not here in point. The complaint in that case was in the nature of a bill of peace to enjoin each of the defendants from prosecuting his action at law to recover damages sustained by him by reason of the overflow of his land by the plaintiff's dam. In its last analysis that action was not one in which the plaintiff claimed one general right only; but, on the contrary, the plaintiff sought to enjoin some eight defendants from prosecuting their separate and independent actions at law, in which there was no community of interests in the questions of law and fact involved therein. In short, the plaintiff united eight independent causes of action in one complaint. The distinction between the other cases in this court cited by defendants and the one at bar is so obvious that it is unnecessary here to specialize them.

Testing the complaint by the rule we have stated, we are of the opinion that several causes of action are not improperly united therein. It fairly appears from the complaint that the Boom Company, by virtue of special laws therein referred to, is practically the overlord of fifteen miles of the river, and vested, as the representative of the sovereign, the state of Minnesota, with the public functions of regulating and administering the navigation of the river within such limits. Osborne v. Knife Falls Boom Corp., 32 Minn. 412, 21 N. W. 704. It is vested with the regal power to take possession and exclusive control of all logs passing through its domain and levy tribute thereon. This grant of power carries with it public duties and obligations. It must treat all persons transporting logs and lumber down the river

impartially. It cannot favor one set of log owners at the expense of the others. It must not detain the logs of any owner for an unreasonable time. In the discharge of its duty to administer the navigation of the river within its domain, it has by necessary implication the power to make and enforce such reasonable regulations as are necessary to the performance of its duties, such as regulating the placing of obstructions in the stream. While it is true that neither it nor the state, which it represents, can invade the private rights of riparian owners, yet, on the other hand, such owners cannot interfere by their structures with the public right of floating logs in the stream which the Boom Company is bound to regulate.

Now, it fairly appears from the complaint that one general right only is claimed by it, namely, the right to have the logs of the relator and others similiarly situated transported down the river along the part thereof controlled by the Boom Company without any unreasonable delay; or, in other words, the subject-matter of the action is the enforcement of the duties imposed by law upon the Boom Company in respect to the navigation of the river. It further appears from the complaint that the codefendants of the Boom Company are necessary parties to any action for the enforcement of the general right claimed in the complaint, and, while they are not equally interested in or affected by the action, they are all interested in some distinct questions which arise out of the right claimed. If the allegations of the complaint be true, the violation of its duties by the Boom Company and its invasion of the right of the relator and the public in the several respects alleged in the complaint, cannot be enjoined, and such right enforced, without affecting in one way or another each and all of the defendants. If the Boom Company is enjoined from shutting down its sorting works when the storage booms of its codefendants are full, or if, to enable it to discharge its public and private obligations, it is necessary, as it appears from the complaint to be, for the court to decree a rearrangement of the trails, booms, and structures of the several defendants in the river, subject to their riparian rights, or a change in the operation thereof, it necessarily follows that all of the defendants are interested in and will be affected by this action. We therefore hold that several causes of action are not improperly united in the complaint herein.

Order affirmed.