AICHELE BROS. INC. v. P. O. SKOGLUND AND OTHERS.[1]

April 12, 1935.

No. 30,295.

*Edgerton, Dohs, Mueller & Edgerton,* for appellant.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for respondents John N. Peyton, W. K. Miller, R. C. Stoeckmann, and R. L. Lindeke.

[1]Reported in 260 N. W. 290.

*George W. Peterson* and *Joseph F. Cowern*, for respondent P. O. Skoglund and L. W. Baumeister.

*Morphy, Bradford, Cummins & Cummins*, for respondents Dr. F. J. Plondke, H. C. Swanson, P. L. Memmer, and W. W. Dunn.

*Thomas E. Latimer*, for respondent Elmer A. Benson.

LORING, JUSTICE.

This is a suit against the officers and directors of the Daytons Bluff State Bank for receiving deposits while they are alleged to have had reason to know the bank was insolvent, contrary to the provisions of 2 Mason Minn. St. 1927, § 10407. Joined with the officers and directors as defendants were John N. Peyton, who was commissioner of banks while the deposits were received, and Elmer A. Benson, a later commissioner of banks, who, it is alleged, refused to permit the examination of certain reports with reference to the Daytons Bluff State Bank. The defendant Benson answered, but it is conceded that no cause of action against him is stated in the complaint, and we find none. The case will therefore be considered as if he were no longer a party, and the other defendants will be referred to hereinafter as the defendants in the action.

All defendants demurred to the complaint on the ground that several causes of action are therein improperly united and on the further ground that the facts stated do not constitute a cause of action. On its face the complaint purports to be divided into three causes of action, the third containing the matter relative to Benson. The second is but a restatement of the charges contained in the first, coupled with an allegation "that by reason of the foregoing facts" the defendants, including Peyton, wilfully connived and confederated together to receive deposits in the bank alleged to have been insolvent, and that the conduct of the defendant Peyton was wilful and malicious.

The trial court sustained Peyton's demurrer on both grounds and sustained the demurrers of the other defendants on the ground that separate causes of action were improperly joined. It is the contention of the plaintiff that in reality but one cause of action is alleged against all of the defendants, including Peyton, and that he,

as well as the officers and directors, is liable to the plaintiff under the provisions of § 10407. Obviously if, as Peyton contends, there is no cause of action stated against him, there is no improper joinder of causes. Howe v. Coates, 90 Minn. 508, 97 N. W. 129. Obviously, too, the trial court was correct regarding the complaint as stating a cause of action under § 10407 against the officers and directors. Consequently, we are confronted first with the question as to whether a cause of action is stated against Peyton. If there be none, then the order sustaining his demurrer must be affirmed and the order sustaining the demurrers by the other defendants must be reversed.

[2]Section 10407 makes it a felony for the officers, directors, stockholders, cashiers, tellers, managers, members, messengers, clerks, persons, parties, or agents of any financial institution to accept or receive deposits therein when they have reason to know that the institution is unsafe or insolvent. Every person who, with knowledge of the unsafe or insolvent condition of the institution, permits or connives at the acceptance of deposits is likewise guilty of a felony.

[2]"10407. Every officer, director, stockholder, cashier, teller, manager, member, messenger, clerk, person, party, or agent of any bank, banking corporation, association or firm, banking house, savings bank, banking exchange, brokerage deposit company and private bank, and every person, company, and corporation engaged in whole or in part in banking, brokerage, exchange, or deposit business in any way, who shall accept or receive on deposit in such bank or banking institution as aforesaid, with or without interest, from any person, any money, bank bills, or notes, or certificates or currency, or other notes, checks, bills, drafts, or paper circulating as money, when he knows, or has good reason to know, that such person, bank, banking corporation, association or firm, banking house, savings bank, banking exchange, brokerage deposit company or private bank as aforesaid is unsafe or insolvent, and every person knowing such insolvency or unsafe condition who shall be accessory to, or permit, or connive at the accepting or receiving on deposit therein or thereby any such deposits as aforesaid, shall be guilty of felony, and punished by imprisonment in the state prison for not less than one nor more than ten years, or by fine of not less than five hundred dollars nor more than ten thousand dollars."

294

Section 10407 was originally L. 1895, c. 219, and has been construed by this court to establish a civil liability on the part of its violators to those suffering damages by the making of such deposits. Baxter v. Coughlin, 70 Minn. 1, 72 N. W. 797; Frederick v. McRae, 157 Minn. 366, 196 N. W. 270. The section cited was an elaboration of § 467 of the old penal code which made the receipt of such deposits a misdemeanor.

We are of the opinion that the word "person" as it was inserted in the statute during its evolution into its present form means someone connected with the financial institution or charged in some way with the performance of its functions. The phrase "of any bank" occurring after the first use of "person" so indicates. This is a criminal statute, and civil liability should not be imposed upon anyone not clearly within its terms. Moreover, § 10407 was enacted prior to § 7688, which gives the commissioner the power of direct action in taking possession. We are clearly of the opinion that the provisions of § 10407 do not apply to the commissioner.

[3]2 Mason Minn. St. 1927, § 7688, authorized the public examiner, now succeeded by the commissioner of banks, to take possession of the property and business of a bank when he found it in an unsound and unsafe condition or when it had violated its charter or

[3]"7688. Whenever it shall appear to the public examiner that any bank has violated its charter, or any law of the state, or is conducting its business in an unsafe or unauthorized manner, or that the capital of any such bank is impaired, or if any such bank or controlling officer thereof shall refuse to submit its books, papers and concerns to the inspection of the public examiner, or any assistant by him thereunto duly authorized, or if any officer of such bank shall refuse to be examined upon oath touching the concerns of such corporation, or if any such bank shall suspend payment of its obligations, or furnish reason for the public examiner concluding that such bank is in an unsound or unsafe condition to transact the business for which it was organized, or that it is unsafe and inexpedient for it to continue business, or if any such bank shall neglect or refuse to observe a proper order of the public examiner, the public examiner may forthwith take possession of the property and business of such bank and retain such possession until such bank shall resume business or its affairs be finally liquidated as herein provided. On taking possession of the property and business of any such bank, the public examiner shall forthwith

conducted its business in an unsafe or unauthorized manner, or had impaired its capital stock, refused to submit its books, suspended payment of its obligations, or when its officers had refused to be examined on oath touching its concerns. The statute, after enumerating the grounds upon which public examiners might act, provided:

"The public examiner may forthwith take possession of the property and business of such bank and retain such possession until such bank shall resume business or its affairs be finally liquidated as herein provided."

The provision authorizing public examiners to take possession without other proceedings came into the law in 1909 (L. 1909, c. 179). Prior to that time he might take possession and ask a competent court for a receiver, and at a still earlier stage he reported the condition of the bank to the governor, who, if he thought it advisable, referred the matter to the attorney general for appropriate action.

It is contended by the plaintiff that the word "may" as it appears in § 7688 must be construed as "must" and that the commissioner of banks performs a ministerial duty in taking possession of a bank under the provisions of § 7688. We do not so construe the section. See Harriet State Bank v. Samels, 164 Minn. 265, 204 N. W. 938; Main v. Schroeder, 171 Minn. 329, 214 N. W. 664; American State Bank v. Jones, 184 Minn. 498, 239 N. W. 144, 78

give notice of such fact to any and all banks, associations and individuals holding or in possession of any assets of such bank. No bank, association or person knowing of such taking possession by the public examiner, or notified as aforesaid, shall have a lien or charge for any payment, advance or clearance thereafter made, or liability thereafter incurred against any of the assets of the bank of whose property and business the public examiner shall have taken possession as aforesaid. Such bank may, with the consent of the public examiner, resume business upon such conditions as may be approved by him. Upon taking possession of the property and business of such bank the public examiner is authorized to collect moneys due to such bank and to do such other acts as are necessary to conserve its assets and business, and shall proceed to liquidate the affairs thereof, if in his opinion such bank cannot safely resume business as hereinafter provided."

A. L. R. 770, where we characterized the discretion of the commissioner under § 7688 as *quasi* judicial. In First State B. & T. Co. v. First Nat. Bank, 193 Minn. 414, 418, 258 N. W. 593, 595, we announced an opinion that § 7688 endowed the commissioner with a wide discretion. We regard his duties under that section in determining what shall be done as *quasi* judicial in character, and therefore the rule of nonliability of officers so acting is applicable to his conduct thereunder. So we come squarely to the question of whether the allegation of malice and connivance incorporated into the so-called second cause of action based upon the facts alleged in the first subdivision of the complaint are sufficient to state a cause of action against Peyton though manifestly the first subdivision does not state a case against him.

The first subdivision charges that Peyton knew that the bank was insolvent, having examined it twice, and that the reports of his examiners and those of its officers showed that it was insolvent, and that, notwithstanding such reports and his knowledge of its insolvency, he permitted it to remain open and receive deposits. From the allegations contained in the first subdivision, which go into great detail, there can be spelled out against Peyton no charge of malice or corruption, and we do not think the conclusions averred in the second subdivision, based as they are on the facts set out in the first, do anything more than allege conclusions wholly unjustified by the particular facts upon which they are based. Lovell v. Marshall, 162 Minn. 18, 202 N. W. 64; Carlson v. Presbyterian Board of Relief, 67 Minn. 436, 70 N. W. 3; 5 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 7722. It therefore becomes unnecessary for us to determine whether malice or corrupt motives impose a civil liability upon an officer acting *quasi* judicially. Such a liability has been seriously questioned. Mechem, Public Officers, § 640, p. 427, citing Bradley v. Fisher, 13 Wall. 335, 20 L. ed. 646. In no case cited to us here has this court established the rule of liability, and we refrain from expressing our views as uncalled for by the record.

The order sustaining the Peyton demurrer is affirmed; that sustaining the demurrers of the other defendants is reversed.