# ANNA KAISER v. DAVID D. BUTCHART AND OTHERS.
## W. E. RAY v. SAME.
## JOHN F. HARRIS AND OTHERS, APPELLANTS.[1]

August 20, 1937.

Nos. 31,197, 31,198.

[1]Reported in 274 N. W. 680.

546

See 197 Minn. 28, 265 N. W. 826.

*Bowen, Best, Flanagan & Rogers* and *Bergmann Richards,* for appellants.

*Lewis, Grannis & Underhill,* for respondents.

*Baldwin, Holmes, Mayall & Reavill* and *Dennis F. Donovan, amici curiae,* filed a brief in support of the contention of appellants.

GALLAGHER, CHIEF JUSTICE.

Appeals by defendants Harris, Upham & Company from orders of the district court overruling demurrers to the amended complaint in each of the above entitled actions.

The same parties are named as defendants in each action and for convenience may be divided into three groups: (1) The Butchart organization; (2) Harris, Upham & Company; and (3) Thomson & McKinnon. The first group, composed of David D. Butchart, Robert B. Harrington, Arthur Soshea, and George N. Butchart, all residents of St. Louis county, operated under the name of D. D. Butchart. Defendant George N. Butchart did not become a member of the organization until January, 1934. This group of defendants were local dealers without membership in any stock exchange. Harris, Upham & Company was a copartnership engaged in a general brokerage business with membership in the New York and other stock exchanges, composed of 12 persons, all named as defendants and all nonresidents of this state. It had offices in Duluth, St. Paul, Minneapolis, and other cities in the United States and Canada. Thomson & McKinnon was also a copartnership engaged in a general brokerage business with memberships in the New York and other exchanges composed of 18 persons, all defendants and all nonresidents of this state with the exception of defendants Charles F. Haley and James F. Barry. This group also had offices in Duluth, St. Paul, Minneapolis, and other cities in the United States and Canada.

The plaintiff in each case was a resident of St. Louis county. They each claim to have been damaged by the facts set forth in

their respective amended complaints. The complaints are practically identical in form except as to the particular transactions out of which loss is claimed to have resulted. Each complaint alleges in substance:

That the Butchart organization transacted business with and through Harris, Upham & Company and Thomson & McKinnon; that many of the orders given by plaintiffs and others to the Butchart organization were never executed but were bucketed with knowledge, coöperation, and assistance of all of the defendants; that the Butchart organization acted as agent for the other defendants and was authorized so to act and was held out to the public as having authority so to act.

That in August, 1930, the Butchart organization became associated in the brokerage business with Harris, Upham & Company; that said company sponsored a wire and ticker in the office of D. D. Butchart and furnished and communicated and delivered and caused to be delivered to the Butchart organization statements of quotations of prices of stocks, bonds, and securities sold and traded on the New York Stock Exchange and other exchanges, and supplied and delivered to the Butchart organization market letters, books, pamphlets, and other literature giving information regarding securities dealt in and handled by Butchart organization and Harris, Upham & Company; that the public was given to understand that said defendants were associated together.

That during the latter part of the year 1933 D. D. Butchart became involved in litigation on account of bucketing and other illegal transactions carried on by the Butchart organization; that because thereof it became inexpedient for the Butchart organization to continue its illegal operations through Harris, Upham & Company; that an agreement was entered into whereby the account of Butchart organization with Harris, Upham & Company was closed out and transferred to defendant Thomson & McKinnon; that it was agreed that Harris, Upham & Company should deliver to Thomson & McKinnon from time to time whatever moneys and securities remained in or came into its hands in connection with the Butchart account; that such payments were made from time to time and that said

account was finally transferred to Thomson & McKinnon early in 1934.

That, notwithstanding said transfer, Harris, Upham & Company, with full knowledge of the manner in which the business was thereafter conducted, continued to furnish said organization market quotations and to sponsor a wire and ticker in the office of the Butchart organization continuously until said Butchart organization ceased doing business about November 24, 1934; that defendant Harris, Upham & Company assisted and abetted the Butchart organization in operating a bucket shop with full knowledge of all the facts.

That early in the year 1934 defendants Thomson & McKinnon became associated in the brokerage business with the Butchart organization; that said defendants knew that the Butchart organization was engaged in bucketing and other illegal transactions and knew that said organization had been involved in litigation; that said Thomson & McKinnon required that said George N. Butchart join the organization to lend prestige and credit thereto.

That said Thomson & McKinnon supplied market quotations to the Butchart organization and supplied the Butchart organization with market letters, books, pamphlets, and literature regarding securities dealt in and handled by Thomson & McKinnon and the Butchart organization; that said literature was distributed generally to the public and that the public, including plaintiff, was given to understand that said Butchart organization was associated with Thomson & McKinnon; that the Butchart organization publicly announced that it was associated with Thomson & McKinnon with the knowledge of said company.

That the plaintiff in each case relied on the representations that the Butchart organization was associated with the other defendants and engaged in business with the Butchart organization because of such reliance.

The Kaiser case involved five transactions. The complaint alleged that on June 21, 1933, plaintiff delivered to the Butchart organization 15 shares of General Motors stock with instructions to sell, the same being delivered to Harris, Upham & Company.

That on October 15, 1933, plaintiff ordered the Butchart organization to buy 25 shares of Standard Brands. That on November 16, 1933, plaintiff ordered the Butchart organization to buy 25 shares of Radio and made payment on account; that the Butchart organization bucketed these orders and that Harris, Upham & Company had knowledge thereof; that on February 7, 1934, following the closing of the account with Harris, Upham & Company and the opening of the account with Thomson & McKinnon, plaintiff ordered the Butchart organization to buy 35 shares of Great Northern Ore and paid $200 on account; that this order was bucketed by the Butchart organization and Thomson & McKinnon.

It further alleged that plaintiff's stock hereinbefore referred to was delivered by the Butchart organization to Harris, Upham & Company and the proceeds applied to the account of D. D. Butchart; that said stock and the proceeds thereof were misappropriated to plaintiff's damage; that the Butchart organization never intended to execute said orders, but intended to bucket same and did bucket same and retained said orders, intending to play the opposite side of the market against plaintiff and to balance the account according to the fluctuations in the market; that defendant Butchart organization used plaintiff's money and stocks to pay its obligations to Harris, Upham & Company and to maintain its credit with that company; and that Harris, Upham & Company accepted the stock and money with full knowledge thereof; that when the account of Butchart organization with Harris, Upham & Company was transferred to Thomson & McKinnon, the Butchart organization and Harris, Upham & Company held stocks and money delivered to them or ordered by plaintiff and for which defendant Butchart organization was responsible to plaintiff; that Thomson & McKinnon had full knowledge of all of the facts and assumed the obligation to account to plaintiff for said securities and moneys.

The Ray complaint involved only one transaction. It alleged that on or about October 6, 1934, plaintiff delivered to the Butchart organization the sum of $1,312.50 to apply on the purchase price of 100 shares of Republic Steel stock which plaintiff ordered the Butchart organization to buy for him; that the Butchart organiza-

tion reported in writing that it had bought said shares, but, notwithstanding said confirmation, said order to purchase was never executed by the defendant Butchart organization or by defendant Thomson & McKinnon but was bucketed by said defendants and the money used by the Butchart organization in its bucketing activities with the knowledge of defendant Thomson & McKinnon.

The amended complaint in each action asked for damages claimed to have been suffered by the plaintiff therein. The cases were argued together in district court and by the agreement of the parties are here on one record and one brief. They were in this court before upon appeals from orders denying appellants' motions to set aside the service of summons in each case. Kaiser v. Butchart, 197 Minn. 28, 265 N. W. 826.

■ The first ground of demurrer is that the facts set out in the amended complaints do not constitute a cause of action against the demurring defendants. As to this ground, the appellants direct their arguments solely to the Ray complaint and base it upon the following propositions: (1) That the transaction referred to in the complaint was not bucketed within the meaning of 2 Mason Minn. St. 1927, § 10488; and (2) that, even though bucketed within the meaning of that statute, the violation of the statute does not render appellants liable to plaintiff in a civil action for the reason that plaintiff is not within the class of persons for whose benefit the statute was enacted.

We find no difficulty in reaching the conclusion that as pleaded in the amended complaint the particular transaction involved in the Ray complaint was bucketed within the meaning of the provisions of 2 Mason Minn. St. 1927, §§ 10488-10490. Section 10488 at length defines what constitutes a bucket shop; § 10490 defines an accessory. Quoting in entirety the sections of the statute referred to would unduly lengthen this opinion. Suffice to say that the facts pleaded adequately connect the appellants and all of them with the operation of a bucket shop within the meaning of the statutory provisions referred to.

■ Assuming that the transaction involved in the Ray complaint was within the prohibition of the statute, is the plaintiff within the

class of persons for whose benefit the statute was enacted so that he may call to his aid the provisions of the statute in a civil action against the violators or their accessories? We think he is. No case directly in point has been called to our attention, nor in our search of the authorities have we found any. The line of cases involving negligence actions are helpful but not controlling. Bott v. Pratt, 33 Minn. 323, 23 N. W. 237, 53 Am. R. 47; Osborne v. McMasters, 40 Minn. 103, 41 N. W. 543, 12 A. S. R. 698; Perry v. Tozer, 90 Minn. 431, 97 N. W. 137, 101 A. S. R. 416; Anderson v. Settergren, 100 Minn. 294, 111 N. W. 279; Schaar v. Conforth, 128 Minn. 460, 151 N. W. 275; Frederick v. McRae, 157 Minn. 366, 196 N. W. 270.

More nearly applicable is the rule applied in Baxter v. Coughlin, 70 Minn. 1, 72 N. W. 797, where it was held that the directors of a bank receiving deposits in violation of L. 1895, c. 219, knowing the bank to be insolvent, became liable to a person making a deposit for the loss sustained, the depositor being ignorant of the insolvency of the bank. This rule was followed in Frederick v. McRae, 157 Minn. 366, 196 N. W. 270, and approved in Aichele Bros. Inc. v. Skoglund, 194 Minn. 291, 260 N. W. 290.

This court has long recognized the rule that when a statute imposes a duty on a person and that person violates the statute he renders himself liable in damages to the person for whose benefit the statute was enacted. Frederick v. McRae, 157 Minn. 366, 196 N. W. 270. The statute involved in this case contains a provision stating its intention in the following language:

"It is the intention of this act to prevent, punish and prohibit, within this state, the business now engaged in and conducted in places commonly known and designated as 'bucket shops,' by persons, corporations, associations or copartnerships, who or which ostensibly carry on the business or occupation of commission merchants or brokers in grain, provisions, petroleum or stocks and bonds."

We do not believe that the legislature intended by the wording used to limit the application of the statute to the prosecution of those who violate it. The prevention of its violation might well be

accomplished not only by the prosecution of the violator but by permitting those innocently beguiled by its violation to recover their losses from the beguiler. By this we are assuming, as we must, that as pleaded the plaintiffs in these cases thought they were engaging in *bona fide* transactions and were without knowledge of the methods by which defendants conducted their respective lines of business. If plaintiffs had knowledge of these facts and were also intentional violators, the statute would offer no consolation to them in the trial of a civil action.

The case of Nagle v. Randall, 115 Minn. 235, 132 N. W. 266, relied upon by appellants, is not controlling nor is the holding applicable. The court there found that neither the landlord nor the keeper of the gambling house involved actually participated in the gambling transactions. Furthermore, in that case the statute violated specifically permitted recovery from the winner only.

Regardless of the right of the plaintiff to call to her aid the provisions of the bucket shop statute in the prosecution of this action, the amended complaint contains sufficient allegations of fraud and conspiracy to sustain it. The rule is that in determining the sufficiency of a complaint when challenged by general demurrer, the demurrer will be overruled if, under any view of the facts pleaded, a cause of action is stated. 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 7528a, 7549, 7724.

Appellants contend that the complaint is defective because it contains alternative allegations. While some of the allegations of the amended complaint may be subject to criticism for that reason, nevertheless the complaint, taken as a whole, contains sufficient unobjectionable allegations to sustain it.

The second ground of demurrer, namely that several causes of action are improperly united, is directed to the amended complaint in the Kaiser case. The complaint in that case refers to five transactions: The first four of these transactions took place in 1933 while the Butchart organization was carrying its account with the Harris, Upham & Company. The other took place in 1934 after the account was transferred from Harris, Upham & Company to Thomson & McKinnon. Appellants contend that the claims

against Harris, Upham & Company arising prior to 1934 cannot be united with the claim against Thomson & McKinnon based on the alleged promise of that company made at the time it took over the Butchart account to assume liability for and to pay the prior claims. In support of this contention appellants rely upon Sanders v. Classon, 13 Minn. 352 (379), holding that a cause of action against an original debtor may not be joined in the same complaint with the cause of action against the promisor on his promise to pay.

The question presented in the Sanders case is not similar to the question presented in the case at bar. Here the complaint sets up a single cause of action against all of the defendants involving the transactions that took place in 1933 and 1934. The rule is that if there is a single cause of action in the plaintiff the question of misjoinder does not arise. Doyle v. St. Paul Union Depot Co. 134 Minn. 461, 159 N. W. 1081.

Appellants further contend that the various claims asserted "do not affect all parties to the action." It seems to us that as pleaded the various claims do affect all parties. It may be that they are not affected alike but that is not material. 2 Mason Minn. St. 1927, § 9277, expressly permits a joinder of causes of action, legal or equitable, when they arise out of the same transaction, are not inconsistent, and affect all parties to the action. It is not necessary that the several causes of action authorized to be joined under the statute refer to or affect all parties alike. Mayberry v. N. P. Ry. Co. 100 Minn. 79, 110 N. W. 356, 12 L.R.A.(N.S.) 675, 10 Ann. Cas. 754; Venner v. G. N. Ry. Co. 117 Minn. 447, 136 N. W. 271, 274. "The relief awarded in such cases may affect them differently; but, when all are concerned in some material part of the subject-matter in litigation, they may be joined." Pleins v. Wachenheimer, 108 Minn. 342, 344, 122 N. W. 166, 167, 133 A. S. R. 451.

Taking the amended complaint as a whole, we conclude that the several causes of action are not improperly joined and that the demurrer upon that ground was properly overruled. All of the defendants are connected with the main purpose of the litigation. As stated by the court in Venner v. G. N. Ry. Co. 117 Minn. 453: "One general right is demanded, and it is not fatal that defendants

554

are in a measure separately or independently involved. State v. Knife Falls Boom Co. 96 Minn. 194, 104 N. W. 817; Pleins v. Wachenheimer, 108 Minn. 342, 122 N. W. 166, 133 A. S. R. 451; Williams v. Crabb, 117 F. 193, 54 C. C. A. 213, 59 L. R. A. 425."

The orders overruling the demurrers in both cases are affirmed.

Stone, Justice (concurring specially).

I concur in the result but with some misgivings as to the need for considering whether a mere violation of the anti-bucketing statute constitutes anything in the way of a new cause of action. Here the complaints state a cause of action for breach of contract or for conversion, and that, in my view, appears to be enough to sustain them against the general demurrers.

