Francis J. SAVAGE, Plaintiff,

v.

UNITED STATES of America, Miles W. Lord, Hartley Nordin, State of Minnesota, Earl Cudd, Cyrus Magnusson, Alfred Anderson, Silas C. Haugen, and Herbert Ramberg, Defendants.

No. 3–70–Civ–177.

United States District Court,
D. Minnesota,
Third Division.

Feb. 12, 1971.

Francis J. Savage, pro se.

Stephen G. Palmer, Asst. U. S. Atty., Minneapolis, Minn., for defendants United States of America, Miles W. Lord and Hartley Nordin.

John R. Kenefick, Asst. Sol. Gen., St. Paul, Minn., for defendants State of Minnesota, Earl Cudd, Alfred O. Anderson and Silas C. Haugen.

Joseph Perry, St. Paul, Minn., for defendant Herbert Ramberg.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

This matter is before the Court on motions to dismiss filed by defendants United States of America, Miles W. Lord, and Hartley Nordin, and by defendants State of Minnesota, Earl Cudd, Alfred Anderson, Silas C. Haugen, and Herbert Ramberg. These motions are made pursuant to the provisions of Rules 12(b) and 56 of the Federal Rules of Civil Procedure.

The complaint attempts to state two claims for relief, one based upon the common law tort of malicious prosecution, the other based upon the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985. Numerous grounds are relied on by defendants in support of their motions for dismissal. For reasons stated below, the motions to dismiss are granted.

From the pleadings, files and records it appears that American Allied Insurance Company (American Allied) was a stock insurance company incorporated under the laws of the State of Minnesota. On August 31, 1964, a routine financial examination of American Allied was conducted by the Insurance Division of the State of Minnesota pursuant to state law. That examination was directed by defendant Anderson, Chief Examiner for the Insurance Division, and the examiners were defendants Haugen and Ramberg. Defendant Magnusson was the Commissioner of Insurance for the State of Minnesota.

The examination report indicated a need for improvement and more adequate maintenance of records on the part of American Allied. Because of this unsatisfactory report and because of additional complaints and an exceptional increase in the volume of business done by American Allied, a second and more extensive examination of American Allied was conducted under the direction and supervision of the above-referenced Chief Examiner and examiners.

These two examinations precipitated action by the State of Minnesota to declare American Allied insolvent and obtain an order for liquidation. Defendant Cudd, Special Assistant Attorney General for the State of Minnesota, participated in the preparation and trial of the insolvency proceeding against American Allied. After a hearing in state district court, an order for liquidation of American Allied was issued on August 4, 1965.

During this time, the affairs of American Allied were also inquired into by United States authorities regarding possible violations of federal law. As a result of the information discovered, facts were presented to a federal grand jury and indictments for mail fraud were returned against various individuals. Plaintiff was one of those against whom an indictment issued. Defendant Lord, then United States Attorney for the District of Minnesota, and defendant Nordin, then Assistant United States Attorney for the District of Minnesota, were responsible for the preparation and presentation of evidence to the grand jury. The indictment against plaintiff was subsequently dismissed on July 21, 1967 without his having to stand trial.

The complaint,[1] of considerable length and apparently drafted by plaintiff without professional legal aid, alleges, in essence, that plaintiff joined American Allied as an employee on or about January 1, 1965 for the purpose of securing protective reinsurance for the company, following assurances by defendants State of Minnesota, Magnusson, Anderson, Haugen, and Ramberg that American Allied was in a state-approved financial condition. Plaintiff alleges that these defendants fraudulently concealed the true financial condition of American Allied. Plaintiff further alleges that each of the defendants, acting individually and in conspiracy, and under the color of law, did wilfully, fraudulently, and maliciously contrive to secure a grand jury indictment against plaintiff without reasonable or probable cause in order to advance their own personal interests, such acts being beyond the discretion of their respective duties and offices. This conduct is alleged to have deprived plaintiff of his civil rights in contravention of the Constitution of the United States and related statutes. It is also alleged that this conduct injured plaintiff's reputation among his friends and business associates so as to prevent plaintiff from pursuing his usual occupation in the insurance industry as a reinsurance specialist. Plaintiff seeks recovery of damages.

■ Plaintiff's complaint as against the United States of America must be dismissed for failure to state a claim upon which relief can be granted. The United States is subject to civil liability for torts committed by its officers and employees only to the extent provided for by the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b) and 2674. The gravamen of plaintiff's complaint against defendants Lord and Nordin is for malicious prosecution. The Federal Tort Claims Act specifically excepts this type of claim from those for which recovery can be had from the United States.

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680.

Thus, the government has expressly reserved its traditional immunity from tort claims of the nature of the one alleged by plaintiff. See Tinkoff v. United States, 211 F.2d 890 (7th Cir. 1954).

■ To the extent plaintiff's complaint is founded on the Civil Rights Act, it fails to state a claim against the United States since the statute applies only to deprivations of constitutional rights caused by other "persons." 42 U.S.C. §§ 1983 and 1985. The United States is not such a "person."

■ Plaintiff's complaint as against the State of Minnesota must be dismissed for lack of jurisdiction. The State of Minnesota is not a "citizen" within the meaning of the Constitution or acts of Congress and hence there is no diversity of citizenship jurisdiction under 28 U.S.C. § 1332. Minnesota v. Northern Securities Co., 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870 (1904); Chicago, R. I. & P. R. Co. v. Long, 181 F.2d 295 (8th Cir. 1950). Nor is the State of Minnesota a "person" within the meaning of the Civil Rights Act. There is no federal question jurisdiction under 28 U.S.C. § 1331. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); United States ex rel. Lee v. People, 343 F.2d 120 (7th Cir. 1965). In addition, plaintiff's claims for relief as against the State of Minnesota are barred by the constitutional doctrine of sovereign immunity. U.S.Const. Amend XI; Spanel v. Mounds View School District No. 621, 264 Minn. 279, 118 N.W. 2d 795 (1962); Berman v. Minnesota

---

1. The original complaint has been twice amended.

State Agriculture Society, 93 Minn. 125, 100 N.W. 732 (1904).

It is undisputed from the pleadings and files that each of the named individual defendants was engaged in the performance of his official duties under Federal or State law at all times material, and in connection with the improper conduct alleged against each of them.

■ The doctrine of quasi-judicial immunity requires the dismissal of plaintiff's complaint as against defendants Lord, Nordin, Cudd, Anderson, Haugen and Ramberg.

Quasi-judicial immunity from suits for civil liability derives from the common law doctrine of judicial immunity, concerning which the Supreme Court stated in 1871:

> "[I]t is a principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 13 Wall. 335, 20 L. Ed. 646 (1871).

An identical concern for the preservation of personal freedom for other public officials charged with discretionary authority from harassment and vindictive or ill-founded damage suits has led the federal courts to apply the doctrine of immunity in suits against lesser governmental officials. By the great weight of authority such officials are immune from civil suits based on allegedly malicious or erroneous acts in the performance of their duties. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (Acting Director of Office of Rent Stabilization—malicious defamation); Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959) (Commander of Boston Naval Shipyard—defamation); Papagianakis v. The Samos, 186 F.2d 257 (4th Cir. 1950) (Immigration Officials—false imprisonment); Swanson v. Willis, 114 F.Supp. 434 (D.Alaska 1953) (Deputy United States Marshal—battery, false arrest); Hartline v. Clary, 141 F.Supp. 151 (E.D.S.C.1956) (Special Agents of Alcohol & Tabacco Tax Division—malicious assault).

The Supreme Court expressly discussed the theory underlying the extension of the immunity doctrine to lesser government officials in Barr v. Matteo, *supra.*

> "The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy. * * * It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted * * * which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits." 79 S.Ct. at 1340–1341.

Within the group of federal officials to whom the immunity has been extended are United States prosecutors and their assistants, such as defendants Lord and Nordin. In the leading and analogous case of Yaselli v. Goff, 12 F.2d 396 (2nd Cir. 1926), aff'd 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927); plaintiff commenced an action for malicious prosecution against a Special Assistant to the Attorney General of the United States alleging that the defendant was guilty of fraudulently and maliciously presenting a case to a grand jury. At his trial the plaintiff had been acquitted and discharged. Damages were requested. Defendant asserted the defense that at all times mentioned in the complaint he was acting as an assistant prosecutor and that all proceed-

ings were conducted by him in the due performance of his duties. In affirming the trial court's dismissal of the complaint the Court of Appeals for the Second Circuit held that the defendant was acting officially and entitled to immunity.

"A United States Attorney, if not a judicial officer, is at least a quasi judicial officer, of the government. He exercises important judicial functions, and is engaged in the enforcement of the law. The reasons for granting immunity to judges, jurors, attorneys, and executive officers of the government apply to a public prosecutor in the performance of the duties which rest upon him. To hold that an attorney of a private client is clothed with absolute privilege, and that a public prosecutor, whose duty it is to enforce the laws of the United States, is not exempt because of what he says and does in the discharge of the duties of his office, is so unreasonable, so contrary to sound public policy, and to the fundamental principles of our jurisprudence, that we cannot accept it.

" * * *

"In our opinion the law requires us to hold that a special assistant to the Attorney General of the United States, in the performance of the duties imposed upon him by law, is immune from a civil action for malicious prosecution based on an indictment and prosecution, although it results in a verdict of not guilty rendered by a jury. The immunity is absolute, and is grounded on principles of public policy. The public interest requires that persons occupying such important positions and so closely identified with the judicial departments of the government should speak and act freely and fearlessly in the discharge of their important official functions.

They should be no more liable to private suits for what they say and do in the discharge of their duties than are the judges and jurors, to say nothing of the witnesses who testify in a case." 12 F.2d at 404, 406.

Subsequent cases involving civil suits against United States legal officers have followed *Yaselli* in application of the immunity doctrine. Lang v. Wood, 67 App.D.C. 287, 92 F.2d 211 (1937); Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135 (1938); Laughlin v. Garnett, 78 U.S.App.D.C. 194, 138 F.2d 931 (1943); Gregoire v. Biddle, 177 F.2d 579 (2nd Cir. 1949); Norton v. McShane, 332 F.2d 855 (5th Cir. 1964); Skolnick v. Hanrahan, 398 F.2d 27 (7th Cir. 1968); Kalec v. Adamowski, 406 F.2d 536 (7th Cir. 1969).

The Minnesota state courts have applied a similar doctrine of quasi-judicial immunity in civil suits against lesser state officials,[2] a fact recently recognized by Judge Neville when speaking for this Court.

"Minnesota courts have long recognized the rule that judges and those acting in a judicial or quasi-judicial capacity are immune from civil liability for damages. The policy behind the rule is to insure that such officers will act upon their convictions free from any apprehension of possible consequences. * * * [T]he shield of judicial immunity has been held to extend to all judicial and quasi-judicial acts, however erroneous." Drexler v. Walters, 290 F.Supp. 150, 154 (D.Minn.1968).

Although the Minnesota courts may not have extended quasi-judicial immunity to lesser state officials as readily and broadly as the federal courts have extended it to lesser federal officials, an analysis of the pertinent state decisions discloses that the immunity is properly applicable to the activities of defendants

---

2. Stewart v. Case, 53 Minn. 62, 54 N.W. 938 (1893); Roerig v. Houghton, 144 Minn. 231, 175 N.W. 542 (1919); Aichele Bros. v. Skoglund, 194 Minn. 291, 260 N.W. 290 (1935); Hoppe v. Klapperich, 224 Minn. 224, 28 N.W.2d 780 (1947); Linder v. Foster, 209 Minn. 43, 295 N.W. 299 (1940); Spanel v. Mounds View School District No. 621, 264 Minn. 279, 118 N.W.2d 795 (1962).

**38**

Cudd, Anderson, Haugen, and Ramberg as referred to in plaintiff's complaint. It is the policy of the Minnesota courts to hold lesser state officials immune from civil suits when the complaint against them arises out of the performance of official duties which culminate in proceedings of a judicial nature, a liquidation proceeding or the return of a criminal indictment coming within the scope of such protected activities. See Linder v. Foster, 209 Minn. 43, 295 N.W. 299 (1940); Aichele Bros. v. Skoglund, 194 Minn. 291, 260 N.W. 290 (1935); Roerig v. Houghton, 144 Minn. 231, 175 N.W. 542 (1919).

A recent decision of the Court of Appeals for the Eighth Circuit is particularly helpful when considering the propriety of extending the benefits of quasi-judicial immunity to the individual defendants in the instant case. In Ruderer v. Meyer, 413 F.2d 175 (8th Cir. 1969), the facts reflect that libel actions had been brought by a discharged federal employee against thirteen other employees of the United States Army Aviation Material Command. The defendants ranged from the directors of various departments to an individual described as a "subordinate" in the personnel office. The alleged misconduct attributed to all defendants was participation in a conspiracy to defame plaintiff so as to bring about his discharge. The Court of Appeals affirmed trial court dismissals of these actions, holding that the case was governed by Barr v. Matteo, *supra*, which required the extension of immunity to each of the defendants. The relevance of this decision to the case at hand is that (1) the conduct complained of is similar to the allegations of plaintiff's complaint, and (2) the application of immunity to a "subordinate" official indicates that arbitrary lines should not be drawn between levels of officials when factors are present which justify an extension of the immunity protection.

The fact that plaintiff relies upon the Civil Rights Act as well as common law tort to support his claim for relief does not alter the application of the doctrine of quasi-judicial immunity in this case. It has many times been held that the doctrine is not modified by the Act. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); Wilhelm v. Turner, 431 F.2d 177 (8th Cir. 1970); Bauers v. Heisel, 361 F.2d 581 (3rd Cir. 1966); Drexler v. Walters, *supra*.

In addition, as against defendants Lord and Nordin, to the extent the complaint attempts to state a cause of action under the Civil Rights Act it fails to do so. The Act applies only to officials acting under the color of state law and has no application to federal officials acting under the color of federal law. Wallach v. Cannon, 357 F.2d 557 (8th Cir. 1966); Elders v. Consolidated Freightways Corp., 289 F.Supp. 630 (D. Minn.1968); Campbell v. Glenwood Hills Hospital, Inc., 224 F.Supp. 27 (D. Minn.1963).

For the foregoing reasons the motions to dismiss are granted.